**EXHIBIT A - 2**

REEL 3017 PG 2022

governmental authorities (including without limitation the New York City Department of Buildings, City Planning Commission, and Board of Standards and Appeals) applicable to the maintenance, demolition, construction, alteration, repair or restoration of the Property, permitted hereunder or under the Declaration or (ii) upon request of a Unit Owner.

(p)   Preparing, executing and recording on behalf of all Unit Owners, as their attorney-in-fact, coupled with an interest (i) amendments of the Declaration and/or these By-Laws, whenever requested by a Commercial Unit Owner, the Declarant or any of its designees, as provided in the Declaration or these By-Laws, or (ii) a restatement of the Declaration and/or By-Laws whenever in the judgment of the Board of Managers it is advisable to consolidate and restate all amendments theretofore made to the Declaration and/or By-Laws.

(q)   Granting utilities or other easements as may, from time to time, be required for the benefit of the Condominium and Unit Owners and controlling power shut-offs and other interruptions of the normal functioning of the Condominium, to facilitate repairs to and renovations of particular Units and/or of the Common Elements. In making determinations in this area, the Board of Managers will make all reasonable efforts to disrupt the business operations of the Unit Owners as little as possible under the circumstances then prevailing.

(r)   Investing any excess funds in savings accounts, treasury bills, certificates of deposit or other such money market instruments and funds which invest in any such instruments.

(s)   Acting as an agent of each Unit Owner who has given his written authorization to complain or apply to the local and county real estate tax assessment agency or board of review by filing a single complaint on behalf of all such Unit Owners pursuant to the applicable sections of the Real Property Tax Law. The Board of Managers may retain legal counsel on behalf of all Unit Owners for which it is acting as agent and assess as a Common Charge against all such Unit Owners a pro rata share of expenses, disbursements, and legal fees paid or incurred in connection with any such complaint or application.

   **Section 3. Managing Agent and Manager.** The Board of Managers may employ for the Condominium a managing agent and/or a manager, at a compensation rate established by the Board of Managers, provided that if such rate is greater than five (5%) percent of the gross receipts of the Condominium during any fiscal year of the

HI:NY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 2 3

Condominium from time to time, then such greater rate shall be comparable to standard rates for similar properties in the vicinity of the Condominium, to perform such duties and services as the Board of Managers shall authorize, including but not limited to the duties listed in subdivisions (a), (c), (d), (j) and (k) of Section 2 of this Article II. However, in no event may the Board of Managers delegate to the manager or managing agent, the powers set forth in subdivisions (b), (e), (f), (g), (h), (i), (l), (m), (n), (o), (p), (q), (r) and (s) of Section 2 of this Article II. The Board of Managers may retain such attorneys, accountants and other professionals as it deems advisable in exercising any of the powers enumerated in Section 2 of this Article II.

Section 4. Removal. Any member of the Board of Managers may be removed with or without cause by a Majority in Common Interest of the Unit Owners (inclusive of the Unit Owners who elected or designated such member), except that if such member was elected by or is a designee of the Commercial Unit Owner(s), Declarant or any of its designees, as the case may be, such member may not be removed other than for cause except by the written consent of such Commercial Unit Owner(s), Declarant or its designees, as the case may be. Any member of the Board of Managers whose removal has been proposed by the Unit Owners shall be given an opportunity to be heard at the meeting.

Section 5. Vacancies. Vacancies in the Board of Managers caused by any reason other than as provided in Section 17 of this Article II or in Section 1 of Article III, (i) in the case of a member of the Board of Managers elected or designated by Declarant or its designees, shall be filled by the written consent of the Unit Owners owning a majority of the Common Interest appurtenant to all of the Units owned by Declarant and its designees and (ii) in the case of any other members of the Board of Managers, shall be filled by vote of a majority of the remaining members of the Board of Managers at a special meeting of the Board of Managers held for that purpose promptly after the occurrence of any such vacancy, even though the members present at such meeting may constitute less than a quorum, and each person so elected shall be a member of the Board of Managers, until a successor shall be elected at the next annual meeting of the Unit Owners or at a special meeting held for that purpose.

Section 6. First Meeting of Board of Managers. The first meeting of the Board of Managers shall be held immediately following the first meeting of the Unit Owners and no notice shall be necessary to the newly elected members of the Board of Managers legally to constitute such meeting, provided that a majority of the members of the Board of Managers shall be present at such first meeting.

Section 7. Regular Meetings. Regular meetings of the Board of Managers may be held at such time and place as shall be determined from time to time by a majority of the members of the Board of Managers but at least four (4) such meetings shall be held during each fiscal year of the Condominium. Notice of regular meetings of the Board of Managers shall be given to each member of the Board of Managers by

- 28 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3 0 1 7 PG 2 0 2 4

personal delivery, mail or telegram at least five (5) business days prior to the day named for such meeting.

**Section 8.    Special Meetings.**  Special meetings of the Board of Managers may be called by the President by giving five (5) business days' prior notice to each member of the Board of Managers by personal delivery, mail or telegram, which notice shall state the time, place and purpose of the meeting.  Special meetings of the Board of Managers shall be called by the President or Secretary in like manner and on like notice on the written request of at least one (1) member of the Board of Managers.

**Section 9.    Waiver of Notice.**  Any member of the Board of Managers may at any time waive notice of any meeting of the Board of Managers in writing and such waiver shall be deemed equivalent to the giving of such notice.  Attendance by a member of the Board of Managers at any meeting of the Board shall constitute a waiver of notice by him of the time and place thereof.  If all members of the Board of Managers are present at any meeting of the Board, no notice shall be required and any business may be transacted at such meeting.

**Section 10.    Quorum of Board of Managers.**  At all meetings of the Board of Managers a majority of the members thereof shall constitute a quorum for the transaction of business.

**Section 11.    Decision of the Board of Managers.**  The votes of a majority of the members of the Board of Managers present at the meeting at which a quorum is present shall constitute the decision of the Board of Managers.  Any one or more members of the Board of Managers or any committee thereof may participate in a meeting of the Board of Managers or committee by means of a conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time.  Participation by such means shall constitute presence in person at a meeting.  If all the members of the Board of Managers are present at any meeting of the Board of Managers, no notice shall be required and any business may be transacted at such meeting.  Any action required or permitted to be taken by the Board of Managers or any committee thereof, as the case may be, may be taken without a meeting if all members of the Board of Managers or the committee, as the case may be, consent in writing to the adoption of a resolution authorizing such action, and the writing or writings are filed with the minutes of the proceedings of the Board of Managers or the committee, as the case may be.

**Section 12.    Adjournment of Meeting.**  If at any meeting of the Board of Managers, the members present shall be less than a quorum, a majority of those present may adjourn the meeting from time to time.  At the next meeting at which a quorum is present following such adjourned meeting, any business which might have been transacted at the meeting originally called may be transacted without further notice.

- 29 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 2 5

**Section 13.  Fidelity Bonds.**  The Board of Managers may obtain fidelity bonds concerning any or all officers and employees of the Condominium and its managing agent, if any, handling or responsible for funds, and the premium on such bonds shall constitute a Common Expense (as hereinafter defined).

**Section 14.  Compensation.**  No member of the Board of Managers shall receive any compensation from the Condominium for acting as such member.

**Section 15.  Liability of Board of Managers and Officers.**  No member of the Board of Managers or any officer of the Condominium shall have any personal liability with respect to (1) any contract, act or omission of the Board of Managers (except with respect to the Unit Owners as provided below) or any managing agent, manager, or officer in connection with the affairs or operations of the Condominium (except in their capacities as Unit Owners) and the liability of any Unit Owner with respect thereto shall be limited as hereinafter set forth, or (2) any mistake of judgment, negligence or otherwise except with respect to the Unit Owners for such member's own individual willful misconduct or bad faith.  Every contract made by the Board of Managers or by any managing agent, manager or officer thereof shall state that it is made by such Board of Managers, managing agent, manager, or officer as agent for all Unit Owners, that such members of the Board of Managers or managing agent, manager or officer shall have no personal liability thereon (except in their capacities as Unit Owners) and shall also provide that the liability of any Unit Owner with respect to any contract with respect to the Condominium shall be limited to such proportionate share of the total liability as the Common Interest of such Unit Owner bears to the aggregate Common Interests of all Unit Owners and, unless expressly stated to the contrary in any such contract (as determined by the Board of Managers in its sole and absolute discretion), shall be limited to such Unit Owner's interest in his Unit so that such Unit Owner shall have no personal liability for such contract.  Nothing in the preceding sentence shall limit a Unit Owner's liability for the payment of Common Charges.  Any such contract may also provide that it covers the assets, if any, of the Condominium on whose behalf the contract is made.  The Unit Owners, including those who are members of the Board of Managers, to the extent provided below, shall indemnify and hold harmless each of the members of the Board of Managers and the officers of the Condominium against all claims, liabilities, costs and expenses (including, without limitation, liability for reason-able attorneys' fees and any contractual liability to others arising out of contracts made by the Board of Managers or officers on behalf of the Condominium) arising out of or relat-ing to the performance of his duties as a member of the Board of Managers or officer except for those arising out of such member's or officers' bad faith or willful misconduct.  Each Unit Owner's liability to indemnify a member of the Board of Managers or officer, as provided above, shall be limited to an amount which is in the same proportion to the total liability of such members or officers to be indemnified by all the Unit Owners hereunder as each such Unit Owner's Common Interest bears to the aggregate Common Interests of all Unit Owners.  It is intended that the members of the Board of Managers and officers shall have no personal liability with respect to any contract made by them on behalf of the Condominium except as Unit Owners.  It is understood that the

I- FNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3017 PG 2026

Board of Managers, which may consist of principals and/or of employees of the Declarant, may contract or effect any other transaction with any member of the Board of Managers, any Unit Owner, officer or Declarant or any of their affiliates, without incurring any liability for self-dealing, provided that the either (i) any compensation paid to Declarant or its affiliates is, if material, disclosed in the Plan (as hereinafter defined) or (ii) is commercially reasonable.

Section 16.  **Executive Committee.**  The Board of Managers may, by resolution duly adopted, appoint an executive committee to consist of one or more members of the Board of Managers with at least one of the members of such executive committee being the member of the Board of Managers elected by the Declarant, if any. Such executive committee shall have and may exercise all the powers of the Board of Managers in the management of the business affairs of the Condominium during the intervals between the meetings of the Board of Managers insofar as may be permitted by law.

Section 17.  **Control by Declarant.**  The Declarant and its designees: (i) shall not be entitled to elect a majority of the members of the Board from and after the earlier of the following dates: a) the fifth anniversary of the Closing Date under the Plan, and b) the date on which the Declarant and its designees own less than 50% of the outstanding Common Interests in the Condominium, and (ii) may not exercise a veto over expenditures conforming to the budget set forth in Schedule B of the Condominium Offering Plan with respect to the Property promulgated by Declarant ("Plan"), and which are for the period covered by said budget, or over expenditures which are for capital repairs required for the operation and maintenance of the Condominium, or over expenditures which are required to comply with applicable laws or regulations.  Upon the earlier of the event(s) stated in clause (i) above, so many serving members of the Board elected by the Declarant or its designees as shall reduce the number of such members to less than a majority of the Board shall resign and such vacancies shall be filled in accordance with the provisions of Section 5(ii) above.

Until the sooner of (i) the date on which the Owners of Unsold Units have a Common Interest in the aggregate of less than twenty-five (25%) percent of the Common Interests of all Units, or (ii) the fifth anniversary of the Closing Date, neither the Board of Managers, nor any officer, nor any Unit Owner, except upon the written consent of the Owners of Unsold Units representing a majority of the Common Interests allocated to all Unsold Units, shall (a) increase the number or change the type of employees described in Schedule B to the Plan; (b) provide for services other than those described in said Schedule B unless the total annual cost of all services to be provided is not greater than the then estimated total cost of the services described in said Schedule B; (c) establish reserves or similar funds to undertake any capital or major improvements or additions except as required by law; (d) change the insurance coverage on the Property from the coverage described in said Schedule B unless the change does not cause an increase in the total annual insurance premiums then due and payable by the Corporation or unless such change is required by the holder of any mortgage on the Property or by the insurance

- 31 -

REEL 3017 PG 2021

carrier insuring the Property to satisfy coinsurance requirements; or (e) remove any members of the Board of Managers elected by the owners of Unsold Units except for cause; any such removal shall be in accordance with the provisions of Article II, Section 4.

The term "Unsold Unit" as used in this Section 17, refers to each Unit until such Unit has been purchased by a bonafide purchaser for residential occupancy on or after the Closing Date under the Plan or until the owner of such Unit or a person related by blood or marriage to such owner becomes the residential occupant of such Unit. The term "Unsold Unit Owner" refers to an owner of an Unsold Unit.

## Article III

### Unit Owners

**Section 1.     Annual Meetings.**  Within forty-five (45) days after the date the Declarant conveys title to the first Residential Unit pursuant to the Plan, the first meeting of Unit Owners shall be held. At such meeting the incumbent Board of Managers shall resign and a new Board shall be elected by the Unit Owners as provided in the By-Laws. Thereafter, annual meetings shall be held on the second (2nd) Tuesday of November of each succeeding year unless such day shall be a holiday in which event the meeting shall be held on the next succeeding business day.  At such meetings the Unit Owners shall elect members of the Board of Managers to fill vacancies or to succeed retiring members of the Board of Managers as provided in Article II of these By-Laws and shall also transact such other business of the Condominium as may properly come before the meeting.

**Section 2.     Place of Meeting.**  Meetings of the Unit Owners shall be held at the principal office of the Condominium or at such other suitable place convenient to the Unit Owners as may be designated by the Board of Managers.

**Section 3.     Special Meetings.**  It shall be the duty of the President to call a special meeting of the Unit Owners if so directed by resolution of the Board of Managers or upon a petition signed and presented to the Secretary by not less than twenty five (25%) percent in Common Interest of all the Unit Owners.  The notice of any special meeting shall state the time and place of such meeting and the purpose thereof.  No business shall be transacted at a special meeting except as stated in the notice.  If the President fails so to call such special meeting, then any Unit Owner may so call such meeting by notice meeting the requirements of Section 4 hereof (except that such notice need not be given by the Secretary).

**Section 4.     Notice of Meeting.**  It shall be the duty of the Secretary to give a notice to each Unit Owner of record of each annual or special meeting stating the purpose thereof and the time and place where it is to be held.  Such notice shall be personally delivered or mailed to the Unit Owner at the address of such Unit Owner at the Property or such other

- 32 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 2 8

address as such Unit Owner shall have designated by notice in writing delivered to the Secretary at least ten (10) days prior to the giving of such notice of meeting by the Secretary. The giving of a notice in the manner provided in these By-Laws shall be considered notice properly served.

**Section 5.  Quorum of Unit Owners.** The presence in person or by proxy of Unit Owners owning in the aggregate more than thirty-five (35%) percent of the Common Interests of all Unit Owners (as modified by the provisions of Section 11 of this Article III) shall constitute a quorum at all meetings of the Unit Owners.

**Section 6.  Adjournment of Meetings.** If any meetings of Unit Owners cannot be held because a quorum is not present, a Majority in Common Interest of the Unit Owners present either in person or by proxy may adjourn the meeting to a time not less than forty-eight (48) hours from the time fixed for the original meeting.

**Section 7.  Order of Business.** The order of business at all annual meetings of the Unit Owners shall be as follows:

     (a)    Roll call.

     (b)    Proof of notice of meeting.

     (c)    Reading of minutes of preceding meeting.

     (d)    Reports of officers.

     (e)    Report of Board of Managers.

     (f)    Report of committees.

     (g)    Report of Managing Agent.

     (h)    Election of inspectors of election.

     (i)    Election of members of the Board of Managers.

     (j)    Unfinished business.

     (k)    New business.

The order of business of all special meetings of the Unit Owners shall conform to the foregoing to the extent practicable.

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 2 9

### Section 8.  Voting.

(a)    The Unit Owner of each Unit or a person designated by such Unit Owner to act as proxy on his behalf and who need not be a Unit Owner shall be entitled to cast the votes appurtenant to such Unit at all meetings of Unit Owners. The designation of any such proxy shall be made in writing to the Secretary and shall be revocable at any time by written notice to the Secretary by the Unit Owner so designating.  Subject to the provisions of Article II Section 17, and the provisions contained in paragraph (d) below, each Unit Owner shall be entitled to cast one (1) vote at all meetings of the Unit Owners for each one-hundredth (1/1000th) of one (1%) percent of the Common Interest applicable to his or its Unit.  A fiduciary shall cast the votes appurtenant to any Unit owned in a fiduciary capacity.

(b)    When voting for members of the Board of Managers, the voting shall be by ballot and each ballot shall state, among other things, the name of the Unit Owner voting and the Common Interest appurtenant to his Unit and in addition the name of the proxy if such ballot is cast by a proxy.

(c)    A Unit Owner shall be entitled to cast as many votes as shall equal the number of votes appurtenant to his Unit for each Member of the Board of Managers to be elected; however no Unit Owner may cumulate his votes.  All elections of members of the Board of Managers pursuant to this Subsection (c) shall be determined by a plurality vote, and shall be balloted all at the same time.

(d)    Notwithstanding anything to the contrary contained herein, the Commercial Unit Owner(s) shall be entitled to elect one (1) member of the Board of Managers and the Residential Unit Owners shall be entitled to elect four (4) members of the Condominium Board.

### Section 9.  Decisions of Unit Owners.
The vote of a Majority in Common Interest of Unit Owners present in person or by proxy at a meeting at which a quorum shall be present shall be binding upon all Unit Owners for all purposes except as otherwise provided in the Declaration or these By-Laws.

### Section 10.  Majority in Common Interest of Unit Owners.
As used in these By-Laws the term "Majority in Common Interest of Unit Owners" shall mean those Unit Owners having more than fifty (50%) percent of the total authorized votes of all Unit Owners present in person or by proxy and voting at any meeting of Unit Owners determined in accordance with the provisions of Sections 8 and 11 of this Article III.

### Section 11.  Exclusion from Computation of Common Interests.
For purposes of Section 5, 8, 9 and 10 of this Article III, the Common Interest of a Unit owned by the Board of Managers or its designee and the votes appurtenant thereto shall be excluded from any computation of the Common Interests of all Unit Owners, Unit Owners present at a meeting, or the total authorized votes of all Unit Owners.

- 34 -

REEL 3 0 1 7 PG 2 0 3 0

## Article IV

## Officers

**Section 1.  Designation.**  The principal officers of the Condominium shall be the President, the Vice President, the Secretary and the Treasurer, all of whom shall be elected by the Board of Managers.  The Board of Managers may appoint an Assistant Treasurer, an Assistant Secretary and such other officer as in its judgment may be necessary.  Any single person may hold any combination of offices except that the office of President and Vice President shall be held by different persons.

**Section 2.  Election of Officers.**  The officers of the Condominium shall be elected annually by the Board of Managers at its annual meetings except upon removal as provided below.

**Section 3.  Removal of Officers.**  Upon the affirmative vote of a majority of the members of the Board of Managers, an officer may be removed, either with or without cause, and his successor may be elected at any regular meeting of the Board of Managers, or at any special meeting of the Board of Managers called for such purpose.

**Section 4.  President.**  The President shall be the chief executive officer of the Condominium.  He shall preside at all meetings of the Unit Owners and the Board of Managers.  He shall have all of the general powers and duties which are incident to the office of President, including but not limited to the power to appoint committees from amongst the Unit Owners from time to time as he may in his discretion decide is appropriate to assist in the conduct of the affairs of the Condominium.  The President shall be a member of the Board of Managers.

**Section 5.  Vice President.**  The Vice President shall take the place of the President and perform his duties whenever the President shall be absent or unable to act. If neither the President nor the Vice President is able to act, the Board of Managers shall appoint some other member of the Board of Managers to act in place of the President, on an interim basis.  The Vice President shall also perform such other duties as shall from time to time be imposed upon him by the Board of Managers or by the President.

**Section 6.  Secretary.**  The Secretary shall keep the minutes of all meetings of the Unit Owners and of the Board of Managers; he shall have charge of such books and papers as the Board of Managers may direct; and he shall, in general, perform all the duties incident to the office of Secretary.

**Section 7.  Treasurer.**  The Treasurer shall have the responsibility for Condominium funds and securities and shall be responsible for keeping full and accurate financial records and books of account showing all receipts and disbursements, and for the preparation of all required financial data.  He shall be responsible for the deposit of all moneys and other valuable effects in the name of the Board of Managers, or the managing

- 35 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3017 PG 2031

agent, in such depositories as may from time to time be designated by the Board of Managers, and he shall, in general, perform all the duties incident to the office of Treasurer.

**Section 8.  Agreements, Contracts, Deeds, Checks, etc.**  All agreements, contracts, deeds, leases, checks and other instruments of the Condominium shall be executed by any officer of the Condominium or by such other person or persons as may be designated from time to time by the Board of Managers.

**Section 9.  Compensation of Officers.**  No officer shall receive any compensation from the Condominium for acting as an officer of the Condominium.

### Article V

### Operation of the Property

**Section 1.   Determination of Common Expenses and Fixing of Common Charges.**

(a)  Except as otherwise provided in the Declaration and these By-Laws, the terms "Common Expense" and "Common Expenses" shall mean any and all (i) costs and expenses paid or incurred by the Condominium in connection with repair, maintenance, replacement, restoration and operation of, and any alteration, addition or improvement to, the Common Elements (including without limitation accounting, legal, architectural, engineering or other professional or service fees); (ii) other items which are provided in the Declaration or these By-Laws to be Common Expenses; and (iii) such reserves as the Board of Managers may determine to be reasonably necessary for general operating costs and expenses, working capital and/or replacement of the Common Elements.

(b)     The Board of Managers shall from time to time, but at least annually, prepare a budget to meet Common Expenses and shall allocate and assess to the Unit Owners pro rata in accordance with the respective Common Interests (except as otherwise provided in the Declaration or these By-Laws), Common Charges to meet Common Expenses. The Board of Managers shall promptly advise all Unit Owners, in writing, of the amount of the Common Charges payable by each of them as determined by the Board of Managers, as aforesaid, and shall furnish to all Unit Owners copies of each budget on which such Common Charges are based. Notwithstanding the foregoing, any and all costs and expenses paid or incurred by the Condominium in connection with the repair, maintenance, replacement, restoration and operation of, and any alteration, addition or improvement to, any Limited Common Elements, shall be allocated and assessed as a Common Expense solely to the Unit Owner or Unit Owners owning the Units, if any, to which such Limited Common Element exclusively services or benefits (individually, a "Benefitted Unit" and, collectively, "Benefitted Units") and, if there is more than one Benefitted Unit, such costs and expenses shall be allocated and assessed to the owners of such Benefitted Units pro rata based upon the ratio that the Common Interests allocated

- 36 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3017 PG 2032

to their respective Benefitted Units bears to the total Common Interests allocated to all such Benefitted Units. Notwithstanding the foregoing, the cost of any ordinary repair and maintenance for the Limited Common Elements appurtenant to Commercial Unit C shall be borne by the owner of such Unit; the cost of any extraordinary repair or replacement of such Limited Common Element shall be borne by all Unit Owners as a Common Expense. The cost of any structural repair or replacement to the portion of the roof comprising part of Unit 16/17 shall be borne by the owner of such Unit. Should the Condominium incur increased insurance premiums solely as a result of a specialized use by a Commercial Unit Owner, such Commercial Unit Owner shall pay such increase in premium directly resulting from such specialized use.

Section 2. _Insurance_. The Board of Managers shall be required to obtain and maintain, to the extent obtainable at reasonable rates, and to the extent determined by the Board of Managers to be appropriate, the insurance set forth below, and the premiums for such insurance shall be a Common Expense except as otherwise provided in the Rules and Regulations: (1) fire insurance with all risks extended coverage, vandalism and malicious mischief endorsements, insuring the Building (including all Units but excluding machinery, appliances, fixtures, furniture, furnishings or other personal property within a Unit), together with all service machinery contained therein and covering the interests of the Condominium, the Board of Managers and all Unit Owners and their mortgagees, as their interests may appear, in an amount equal to the greater of (i) the then outstanding principal amount under the notes (the "Construction Loan") held by Lehman Brothers Holdings Inc. or its successors and assigns (the "Construction Lender") or (ii) at least 80% of the full replacement value of the Building (exclusive of foundations and footings), without deduction for depreciation, and each of such policies of insurance shall contain a New York standard mortgagee clause in favor of each mortgagee of a Unit which shall provide that the loss, if any, thereunder shall be payable to such mortgagee as its interest may appear, subject, however, to the loss payment provisions in favor of the Board of Managers and the Insurance Trustee hereinafter set forth; (2) worker's compensation insurance and New York State disability benefits insurance (if applicable); (3) comprehensive general liability coverage; (4) water damage insurance to the extent if any determined by the Board of Managers; (5) fidelity bond for managing agent to the extent if any determined by the Board of Managers; (6) errors and omissions insurance for members of the Board of Managers and officers to the extent if any determined by the Board of Managers; and (7) such other insurance as the Board of Managers may determine (including, without limitation, rent insurance in an amount equal to six months Common Charges, boiler and machinery insurance, plate glass insurance and elevator liability and collision insurance). To the extent not specified above, all such insurance shall be in such amount as the Board of Managers shall from time to time determine to be reasonable. All of such policies shall provide that adjustment of loss shall be made by the Board of Managers and all policies of physical damage insurance shall provide that the proceeds thereof, if $100,000 or less, shall be paid to the Board of Managers, and if in excess of $100,000 shall be paid to the Insurance Trustee, which Insurance Trustee shall, at the option of the Construction Lender, be the Construction Lender, or its successors, assigns or designee for so long as the Construction Loan or any portion thereof is outstanding. The Board of Managers shall pay

- 37 -

{FNY2: #436338 v2/04267-0000 / 12/02/1999}

25×

REEL 3 0 1 7 PG 2 0 3 3

the fees and disbursements of any Insurance Trustee and such fees and disbursements shall constitute a Common Expense of the Condominium.

All policies of physical damage insurance shall contain, if obtainable at reasonable rates, waivers of subrogation and waivers of any defense based on co-insurance or of invalidity arising from any acts of the insured or of pro rata reduction of liability, and shall provide that such policies may not be canceled or substantially modified without at least ten (10) days' prior written notice to all of the insureds, including all mortgagees of Units. Duplicate originals of all policies of physical damage insurance and of all renewals thereof, together with proof of payment of premiums, shall be delivered to all mortgagees of Units at least ten (10) days prior to expiration of the then current policies. Prior to obtaining any policy of casualty insurance or any renewal thereof, the Board of Managers shall obtain an appraisal from a casualty insurance company or otherwise of the full replacement value of the Building (exclusive of foundations and footings), without deduction for depreciation, for the purpose of determining the amount of casualty insurance to be obtained pursuant to this Section.

Each Unit Owner may carry supplemental or additional insurance for his own benefit, provided that all such policies shall contain waivers of subrogation, and further provided that the liability of the carriers issuing insurance obtained by the Board of Managers shall not be affected or diminished by reason of any such supplemental or addi- tional insurance.

The liability insurance coverage required to be obtained by the Board of Managers as set forth above shall cover, to the extent possible, liability claims arising out of the Property, in such limits as the Board of Managers may from time to time determine, covering each member of the Board of Managers, the officers, the managing agent, if any, and each Unit Owner. Such public liability coverage shall also cover cross liability claims of one insured against another. The Board of Managers shall review such limits at least once each year.

Any insurance maintained by the Board of Managers may provide for such deductible amounts as the Board determines from time to time.

**Section 3.** <u>**Repair or Reconstruction After Fire or Other Casualty.**</u> In the event of damage to or destruction of the Building as a result of fire or other casualty (unless 75% or more of the Building is destroyed or substantially damaged and 75% or more in Common Interest of all Unit Owners do not, within sixty (60) days from the date of such damage or destruction, duly resolve to proceed with repair or restoration), the Board of Managers shall arrange for the prompt repair and restoration of the Building including the Units but excluding any machinery, appliances, furniture, furnishings (including wall, ceiling and floor decorations and coverings), fixtures or equipment in the Units, and the Board of Managers or the Insurance Trustee, as the case may be, shall disburse the proceeds of the applicable insurance policies to the contractors engaged in such repair and restoration in appropriate progress payments. Any cost of such repair and restoration in excess of the

- 38 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 3 4

insurance proceeds shall constitute a Common Expense. In the event the insurance proceeds exceed the cost of repair or restoration, such excess shall be divided by the Board of Managers or the Insurance Trustee, as the case may be, among the Unit Owners in proportion to their respective Common Interests after first paying to the Permitted Mortgagees of a Unit and any other holders of liens against the Unit (including the Board of Managers) out of the share of the Owner of such Unit, the amount of any unpaid liens on his Unit, in the order of their priority.

If 75% or more of the Building is destroyed or substantially damaged and 75% or more in Common Interest of all Unit Owners do not within sixty (60) days from the date of such damage or destruction, duly resolve to proceed with repair or restoration, the Property shall be subject to an action for partition at the suit of any Unit Owner or lienor, as if owned in common, in which event the net proceeds of sale, together with the net proceeds of insurance policies, shall be divided by the Board of Managers or the Insurance Trustee, as the case may be, among all of the Unit Owners in proportion to their respective Common Interests, after first paying to the Permitted Mortgagees of a Unit and any other holders of liens against the Unit (including the Board of Managers) out of the share of the owner of such Unit, the amount of any unpaid liens on his Unit, in the order of priority of such liens.

Section 4. **Payment of Common Charges**. The term "Common Charges" shall mean any charge assessed by the Board of Managers against any Unit Owner. A Unit Owner shall be obligated to pay the Common Charges assessed by the Board of Managers against such Unit Owner at such time or times as the Board of Managers shall determine. Unless otherwise determined by the Board of Managers, the Common Charges assessed by the Board of Managers to meet Common Expenses for a fiscal year of the Condominium shall be due and payable in equal monthly installments in advance on the first day of each month during such fiscal year.

Section 5. **Collection of Common Charges**. The Board of Managers shall assess Common Charges against the Unit Owners from time to time, but at least monthly, and in an amount sufficient to cover its cash requirements for such period as it shall determine, but not less than the ensuing month, and shall take prompt action to collect any Common Charges due from any Unit Owner which remain unpaid for more than thirty (30) days from the due date for payment thereof.

Section 6. **Default in Payment of Common Charges**. In the event any Unit Owner fails to make payment of any Common Charges within fifteen (15) days of its due date (although nothing herein shall be deemed to extend the period within which such Common Charges are to be paid), such Unit Owner shall be obligated to pay (a) a late charge at the rate of $.02 per dollar per month or any part thereof for all such overdue Common Charges, from the due date of such Common Charges until paid, and (b) all costs and expenses, including, without limitation, reasonable attorneys' fees paid or incurred by the Board of Managers and/or another Unit Owner, in any proceeding brought to collect such unpaid Common Charges or in an action to foreclose the lien on such Unit arising

- 39 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 3 5

from said unpaid Common Charges as provided in Section 339-z of the Condominium Act, in the manner provided in Section 339-aa thereof, or in any other manner permitted by law. All such late charges and costs and expenses shall be added to, and shall constitute, Common Charges payable by such Unit Owner. In addition, the Board of Managers shall have the right to levy against Unit Owners such just and appropriate fines as it deems advisable for noncompliance with any of the provisions of the Declaration, these By-Laws or the Rules and Regulations. All such fines shall be added to and shall constitute Common Charges payable by such Unit Owner.

**Section 7.  Foreclosure of Liens for Unpaid Common Charges.**  In any action brought to foreclose a lien on a Unit for unpaid Common Charges, the Unit Owner shall be required to pay a reasonable rental for the use and occupancy of his Unit, and the plaintiff in such foreclosure action shall be entitled to the appointment, without notice, of a receiver to collect the same. A suit to recover a money judgment for unpaid Common Charges shall be maintainable without foreclosing or waiving the lien securing such charges. In the event the net proceeds received on such foreclosure (after deduction of all legal fees, advertising costs, brokerage commissions and other costs and expenses incurred in connection therewith) are insufficient to satisfy the defaulting Unit Owner's obligations, such Unit Owner shall remain liable for the deficiency.

No Unit Owner shall be liable for the payment of any part of the Common Charges against his Unit accruing subsequent to a sale or other conveyance by him of such Unit, together with its Appurtenant Interest, provided that no violation of any provision of the Declaration or these By-Laws then exists with respect to such Unit. Any Unit Owner may, by conveying his Unit and its Appurtenant Interest to the Board of Managers, or its designee, corporate or otherwise, exempt himself from the liability for Common Charges accruing after such conveyance, subject to the terms and conditions of these By-Laws, provided that at the time of such conveyance (a) such Unit is free and clear of liens and encumbrances other than a Permitted Mortgage and the statutory lien for Common Charges and (b) no violation of any provision of the Declaration, these By-Laws or the Rules and Regulations then exists with respect to such Unit. A purchaser of a Unit shall be liable for the payment of Common Charges accrued and unpaid against such Unit prior to the acquisition by him of such Unit, except as hereinafter provided. A purchaser of a Unit at a foreclosure sale pursuant to a Permitted Mortgage against such Unit shall not be liable, and such Unit shall not be subject to a lien, for the payment of Common Charges, accrued and unpaid against such Unit prior to the acquisition by said purchaser of such Unit. However, the owner of such Unit prior to the foreclosure sale shall remain liable for the payment of all unpaid Common Charges which accrued prior to such sale.

**Section 8.  Statement of Common Charges.**  The Board of Managers shall promptly provide any Unit Owner, so requesting the same in writing, with a written statement of all unpaid Common Charges due from such Unit Owner.

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3017 PG 2036

**Section 9.   Maintenance and Repairs.**

(i)         Each Unit Owner shall maintain his Unit in good working order and condition, ordinary wear and tear excepted.  All maintenance, repairs and replacements in or to any Unit (other than maintenance of and repairs to any Common Elements contained in the Unit), any installations to the exterior of the Building made by any Unit Owner, and any electrical, plumbing, heating and air conditioning fixtures in the Unit (other than those constituting Common Elements), whether structural or nonstructural, ordinary or extraordinary (including, without limitation, painting and decoration of the Unit), shall be performed by the Unit Owner of such Unit, at the Unit Owner's sole cost and expense, except as provided in Section 12 hereof and except as set forth below.  All repairs and replacements shall be of a quality or class equal to the original work or construction.  Each Unit Owner shall give the Board of Managers prompt notice of any defect in the plumbing, heating and electrical systems in his Unit after actual notice thereof by such Unit Owner.   Each Unit Owner shall perform such construction, alterations or improvements to its Unit and the Common Elements as from time to time shall be necessary to render its occupancy of such Unit lawful.   The exterior surface of all windows deemed a part of a Unit shall be washed and cleaned by the owner thereof. Prior to the issuance of a permanent certificate of occupancy for the Building following completion of the rehabilitation and construction as described in the Plan, no Unit Owner other than Declarant and its designees shall make any alterations or improvements (by himself or with any of his contractors) to such Unit Owner's Unit, including, without limitation, installation of interior walls or partitions, without the prior written consent of Declarant.

(ii)     Except as provided in Section 9 above, or as applicable to a Limited Common Element, or as elsewhere provided in these By-laws or in the

- 41 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25 × 10

REEL 3017 PG 2037

Declaration, all maintenance of, replacement of and repairs to the exterior walls of the Building and the Common Elements and infill of lot line windows, if required, shall be performed by the Board of Managers and the cost and expense thereof shall be charged as a Common Expense as provided in these By-Laws. In making such repairs or replacements, the Board of Managers or its designee shall make all reasonable efforts (i) to minimize any interference with the Unit Owners' use and enjoyment of and business conducted in their Units and (ii) to conceal in the walls, floors or ceilings, or if not feasible, box in without materially reducing usable areas of the affected Unit or its ceiling height, any pipes or conduits installed by the Board of Managers.

(iii)    If any maintenance of, replacement of or repairs to the Property or any part thereof are necessitated by the negligence of (i) any Unit Owner (including, without limitation, the owner of Residential Unit 16/17), his tenants or visitors or occupants of the Unit,  then the entire cost thereof shall be borne by such Unit Owner and shall be assessed by the Board of Managers against such Unit Owner as a Common Charge or (ii) the Board of Managers, then the entire cost thereof shall be a Common Expense.

**Section 10.  Performance of Unit Owners' Obligations and Injunctive Relief.** If any Unit Owner defaults in any of his obligations under the Declaration, these By-Laws or the Rules and Regulations other than the obligation to pay Common Charges, then in such event the Board of Managers may send to such Unit Owner a notice specifying the default. If within thirty (30) days after the service of such notice upon the Unit Owner, such Unit Owner fails to cure such default or, in the case of a default not reasonably susceptible to cure within such period, fails to commence to cure such default within such thirty (30) day period and thereafter prosecute such cure to completion with due diligence, then the Board of Managers or its designee may enter the Unit and cure such default and the Board of Managers shall be entitled to seek injunctive relief against such defaulting Unit Owner. All sums expended and all costs and expenses incurred in connection with the curing of such default together with interest thereon at the rate of 2% per month (but in no event in excess of the maximum rate permitted by law) shall be added to and shall constitute a Common Charge against such Unit Owner.

- 42 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25×