**B-9**

(b)    Proof of notice of meeting.

(c)    Reading of minutes of preceding meeting.

(d)    Reports of officers.

(e)    Report of Board of Managers.

(f)    Report of committees.

(g)    Report of Managing Agent.

(h)    Election of inspectors of election.

(i)    Election of members of the Board of Managers.

(j)    Unfinished business.

(k)    New business.

The order of business of all special meetings of the Unit Owners shall conform to the foregoing to the extent practicable.

**Section 8.    <u>Voting</u>.**

(a)    The Unit Owner of each Unit or a person designated by such Unit Owner to act as proxy on his behalf and who need not be a Unit Owner shall be entitled to cast the votes appurtenant to such Unit at all meetings of Unit Owners.  The designation of any such proxy shall be made in writing to the Secretary and shall be revocable at any time by written notice to the Secretary by the Unit Owner so designating.  Subject to the provisions of Article II Section 17, and the provisions contained in paragraph (d) below, each Unit Owner shall be entitled to cast one (1) vote at all meetings of the Unit Owners for each one-hundredth (1/1000th) of one (1%) percent of the Common Interest applicable to his or its Unit.  A fiduciary shall cast the votes appurtenant to any Unit owned in a fiduciary capacity.

(b)    When voting for members of the Board of Managers, the voting shall be by ballot and each ballot shall state, among other things, the name of the Unit Owner voting and the Common Interest appurtenant to his Unit and in addition the name of the proxy if such ballot is cast by a proxy.

(c)    A Unit Owner shall be entitled to cast as many votes as shall equal the number of votes appurtenant to his Unit for each Member of the Board of Managers to be elected; however no Unit Owner may cumulate his votes.  All elections of members of the Board of Managers pursuant to this Subsection (c) shall be determined by a plurality vote, and shall be balloted all at the same time.

341

(d)    Notwithstanding anything to the contrary contained herein, the Commercial Unit Owner(s) shall be entitled to elect one (1) member of the Board of Managers and the Residential Unit Owners shall be entitled to elect four (4) members of the Condominium Board.

Section 9.  **Decisions of Unit Owners.**  The vote of a Majority in Common Interest of Unit Owners present in person or by proxy at a meeting at which a quorum shall be present shall be binding upon all Unit Owners for all purposes except as otherwise provided in the Declaration or these By-Laws.

Section 10.  **Majority in Common Interest of Unit Owners.**  As used in these By-Laws the term "Majority in Common Interest of Unit Owners" shall mean those Unit Owners having more than fifty (50%) percent of the total authorized votes of all Unit Owners present in person or by proxy and voting at any meeting of Unit Owners determined in accordance with the provisions of Sections 8 and 11 of this Article III.

Section 11.  **Exclusion from Computation of Common Interests.**  For purposes of Section 5, 8, 9 and 10 of this Article III, the Common Interest of a Unit owned by the Board of Managers or its designee and the votes appurtenant thereto shall be excluded from any computation of the Common Interests of all Unit Owners, Unit Owners present at a meeting, or the total authorized votes of all Unit Owners.

**Article IV**

**Officers**

Section 1.  **Designation.**  The principal officers of the Condominium shall be the President, the Vice President, the Secretary and the Treasurer, all of whom shall be elected by the Board of Managers.  The Board of Managers may appoint an Assistant Treasurer, an Assistant Secretary and such other officer as in its judgment may be necessary.  Any single person may hold any combination of offices except that the office of President and Vice President shall be held by different persons.

Section 2.  **Election of Officers.**  The officers of the Condominium shall be elected annually by the Board of Managers at its annual meetings except upon removal as provided below.

Section 3.  **Removal of Officers.**  Upon the affirmative vote of a majority of the members of the Board of Managers, an officer may be removed, either with or without cause, and his successor may be elected at any regular meeting of the Board of Managers, or at any special meeting of the Board of Managers called for such purpose.

Section 4.  **President.**  The President shall be the chief executive officer of the Condominium.  He shall preside at all meetings of the Unit Owners and the Board of Managers.  He shall have all of the general powers and duties which are incident to the

342

office of President, including but not limited to the power to appoint committees from amongst the Unit Owners from time to time as he may in his discretion decide is appropriate to assist in the conduct of the affairs of the Condominium. The President shall be a member of the Board of Managers.

Section 5. **Vice President.** The Vice President shall take the place of the President and perform his duties whenever the President shall be absent or unable to act. If neither the President nor the Vice President is able to act, the Board of Managers shall appoint some other member of the Board of Managers to act in place of the President, on an interim basis. The Vice President shall also perform such other duties as shall from time to time be imposed upon him by the Board of Managers or by the President.

Section 6. **Secretary.** The Secretary shall keep the minutes of all meetings of the Unit Owners and of the Board of Managers; he shall have charge of such books and papers as the Board of Managers may direct; and he shall, in general, perform all the duties incident to the office of Secretary.

Section 7. **Treasurer.** The Treasurer shall have the responsibility for Condominium funds and securities and shall be responsible for keeping full and accurate financial records and books of account showing all receipts and disbursements, and for the preparation of all required financial data. He shall be responsible for the deposit of all moneys and other valuable effects in the name of the Board of Managers, or the managing agent, in such depositories as may from time to time be designated by the Board of Managers, and he shall, in general, perform all the duties incident to the office of Treasurer.

Section 8. **Agreements, Contracts, Deeds, Checks, etc.** All agreements, contracts, deeds, leases, checks and other instruments of the Condominium shall be executed by any officer of the Condominium or by such other person or persons as may be designated from time to time by the Board of Managers.

Section 9. **Compensation of Officers.** No officer shall receive any compensation from the Condominium for acting as an officer of the Condominium.

**Article V**

**Operation of the Property**

Section 1. **Determination of Common Expenses and Fixing of Common Charges.**

(a) Except as otherwise provided in the Declaration and these By-Laws, the terms "Common Expense" and "Common Expenses" shall mean any and all (i) costs and expenses paid or incurred by the Condominium in connection with repair, maintenance, replacement, restoration and operation of, and any alteration, addition or

343

improvement to, the Common Elements (including without limitation accounting, legal, architectural, engineering or other professional or service fees); (ii) other items which are provided in the Declaration or these By-Laws to be Common Expenses; and (iii) such reserves as the Board of Managers may determine to be reasonably necessary for general operating costs and expenses, working capital and/or replacement of the Common Elements.

(b)    The Board of Managers shall from time to time, but at least annually, prepare a budget to meet Common Expenses and shall allocate and assess to the Unit Owners pro rata in accordance with the respective Common Interests (except as otherwise provided in the Declaration or these By-Laws), Common Charges to meet Common Expenses. The Board of Managers shall promptly advise all Unit Owners, in writing, of the amount of the Common Charges payable by each of them as determined by the Board of Managers, as aforesaid, and shall furnish to all Unit Owners copies of each budget on which such Common Charges are based. Notwithstanding the foregoing, any and all costs and expenses paid or incurred by the Condominium in connection with the repair, maintenance, replacement, restoration and operation of, and any alteration, addition or improvement to, any Limited Common Elements, shall be allocated and assessed as a Common Expense solely to the Unit Owner or Unit Owners owning the Units, if any, to which such Limited Common Element exclusively services or benefits (individually, a "Benefitted Unit" and, collectively, "Benefitted Units") and, if there is more than one Benefitted Unit, such costs and expenses shall be allocated and assessed to the owners of such Benefitted Units pro rata based upon the ratio that the Common Interests allocated to their respective Benefitted Units bears to the total Common Interests allocated to all such Benefitted Units. Notwithstanding the foregoing, the cost of any ordinary repair and maintenance for the Limited Common Elements appurtenant to Commercial Unit C shall be borne by the owner of such Unit; the cost of any extraordinary repair or replacement of such Limited Common Element shall be borne by all Unit Owners as a Common Expense. The cost of any structural repair or replacement to the portion of the roof comprising part of Unit 17 shall be borne by the owner of such Unit. Should the Condominium incur increased insurance premiums solely as a result of a specialized use by a Commercial Unit Owner, such Commercial Unit Owner shall pay such increase in premium directly resulting from such specialized use.

Section 2.    Insurance.    The Board of Managers shall be required to obtain and maintain, to the extent obtainable at reasonable rates, and to the extent determined by the Board of Managers to be appropriate, the insurance set forth below, and the premiums for such insurance shall be a Common Expense except as otherwise provided in the Rules and Regulations: (1) fire insurance with all risks extended coverage, vandalism and malicious mischief endorsements, insuring the Building (including all Units but excluding machinery, appliances, fixtures, furniture, furnishings or other personal property within a Unit), together with all service machinery contained therein and covering the interests of the Condominium, the Board of Managers and all Unit Owners and their mortgagees, as their interests may appear, in an amount equal to the greater of (i) the then outstanding principal amount under the notes (the "Construction

Loan") held by Lehman Brothers Holdings Inc. or its successors and assigns (the "Construction Lender") or (ii) at least 80% of the full replacement value of the Building (exclusive of foundations and footings), without deduction for depreciation, and each of such policies of insurance shall contain a New York standard mortgagee clause in favor of each mortgagee of a Unit which shall provide that the loss, if any, thereunder shall be payable to such mortgagee as its interest may appear, subject, however, to the loss payment provisions in favor of the Board of Managers and the Insurance Trustee hereinafter set forth; (2) worker's compensation insurance and New York State disability benefits insurance (if applicable); (3) comprehensive general liability coverage; (4) water damage insurance to the extent if any determined by the Board of Managers; (5) fidelity bond for managing agent to the extent if any determined by the Board of Managers; (6) errors and omissions insurance for members of the Board of Managers and officers to the extent if any determined by the Board of Managers; and (7) such other insurance as the Board of Managers may determine (including, without limitation, rent insurance in an amount equal to six months Common Charges, boiler and machinery insurance, plate glass insurance and elevator liability and collision insurance). To the extent not specified above, all such insurance shall be in such amount as the Board of Managers shall from time to time determine to be reasonable. All of such policies shall provide that adjustment of loss shall be made by the Board of Managers and all policies of physical damage insurance shall provide that the proceeds thereof, if $100,000 or less, shall be paid to the Board of Managers, and if in excess of $100,000 shall be paid to the Insurance Trustee, which Insurance Trustee shall, at the option of the Construction Lender, be the Construction Lender, or its successors, assigns or designee for so long as the Construction Loan or any portion thereof is outstanding. The Board of Managers shall pay the fees and disbursements of any Insurance Trustee and such fees and disbursements shall constitute a Common Expense of the Condominium.

All policies of physical damage insurance shall contain, if obtainable at reasonable rates, waivers of subrogation and waivers of any defense based on co-insurance or of invalidity arising from any acts of the insured or of pro rata reduction of liability, and shall provide that such policies may not be canceled or substantially modified without at least ten (10) days' prior written notice to all of the insureds, including all mortgagees of Units. Duplicate originals of all policies of physical damage insurance and of all renewals thereof, together with proof of payment of premiums, shall be delivered to all mortgagees of Units at least ten (10) days prior to expiration of the then current policies. Prior to obtaining any policy of casualty insurance or any renewal thereof, the Board of Managers shall obtain an appraisal from a casualty insurance company or otherwise of the full replacement value of the Building (exclusive of foundations and footings), without deduction for depreciation, for the purpose of determining the amount of casualty insurance to be obtained pursuant to this Section.

Each Unit Owner may carry supplemental or additional insurance for his own benefit, provided that all such policies shall contain waivers of subrogation, and further provided that the liability of the carriers issuing insurance obtained by the Board of

345

Managers shall not be affected or diminished by reason of any such supplemental or additional insurance.

The liability insurance coverage required to be obtained by the Board of Managers as set forth above shall cover, to the extent possible, liability claims arising out of the Property, in such limits as the Board of Managers may from time to time determine, covering each member of the Board of Managers, the officers, the managing agent, if any, and each Unit Owner. Such public liability coverage shall also cover cross liability claims of one insured against another. The Board of Managers shall review such limits at least once each year.

Any insurance maintained by the Board of Managers may provide for such deductible amounts as the Board determines from time to time.

Section 3. **Repair or Reconstruction After Fire or Other Casualty.** In the event of damage to or destruction of the Building as a result of fire or other casualty (unless 75% or more of the Building is destroyed or substantially damaged and 75% or more in Common Interest of all Unit Owners do not, within sixty (60) days from the date of such damage or destruction, duly resolve to proceed with repair or restoration), the Board of Managers shall arrange for the prompt repair and restoration of the Building including the Units but excluding any machinery, appliances, furniture, furnishings (including wall, ceiling and floor decorations and coverings), fixtures or equipment in the Units, and the Board of Managers or the Insurance Trustee, as the case may be, shall disburse the proceeds of the applicable insurance policies to the contractors engaged in such repair and restoration in appropriate progress payments. Any cost of such repair and restoration in excess of the insurance proceeds shall constitute a Common Expense. In the event the insurance proceeds exceed the cost of repair or restoration, such excess shall be divided by the Board of Managers or the Insurance Trustee, as the case may be, among the Unit Owners in proportion to their respective Common Interests after first paying to the Permitted Mortgagees of a Unit and any other holders of liens against the Unit (including the Board of Managers) out of the share of the Owner of such Unit, the amount of any unpaid liens on his Unit, in the order of their priority.

If 75% or more of the Building is destroyed or substantially damaged and 75% or more in Common Interest of all Unit Owners do not within sixty (60) days from the date of such damage or destruction, duly resolve to proceed with repair or restoration, the Property shall be subject to an action for partition at the suit of any Unit Owner or lienor, as if owned in common, in which event the net proceeds of sale, together with the net proceeds of insurance policies, shall be divided by the Board of Managers or the Insurance Trustee, as the case may be, among all of the Unit Owners in proportion to their respective Common Interests, after first paying to the Permitted Mortgagees of a Unit and any other holders of liens against the Unit (including the Board of Managers) out of the share of the owner of such Unit, the amount of any unpaid liens on his Unit, in the order of priority of such liens.

346

**Section 4.  Payment of Common Charges.**  The term "Common Charges" shall mean any charge assessed by the Board of Managers against any Unit Owner.  A Unit Owner shall be obligated to pay the Common Charges assessed by the Board of Managers against such Unit Owner at such time or times as the Board of Managers shall determine.  Unless otherwise determined by the Board of Managers, the Common Charges assessed by the Board of Managers to meet Common Expenses for a fiscal year of the Condominium shall be due and payable in equal monthly installments in advance on the first day of each month during such fiscal year.

**Section 5.  Collection of Common Charges.**  The Board of Managers shall assess Common Charges against the Unit Owners from time to time, but at least monthly, and in an amount sufficient to cover its cash requirements for such period as it shall determine, but not less than the ensuing month, and shall take prompt action to collect any Common Charges due from any Unit Owner which remain unpaid for more than thirty (30) days from the due date for payment thereof.

**Section 6.  Default in Payment of Common Charges.**  In the event any Unit Owner fails to make payment of any Common Charges within fifteen (15) days of its due date (although nothing herein shall be deemed to extend the period within which such Common Charges are to be paid), such Unit Owner shall be obligated to pay (a) a late charge at the rate of $.02 per dollar per month or any part thereof for all such overdue Common Charges, from the due date of such Common Charges until paid, and (b) all costs and expenses, including, without limitation, reasonable attorneys' fees paid or incurred by the Board of Managers and/or another Unit Owner, in any proceeding brought to collect such unpaid Common Charges or in an action to foreclose the lien on such Unit arising from said unpaid Common Charges as provided in Section 339-z of the Condominium Act, in the manner provided in Section 339-aa thereof, or in any other manner permitted by law.  All such late charges and costs and expenses shall be added to, and shall constitute, Common Charges payable by such Unit Owner.  In addition, the Board of Managers shall have the right to levy against Unit Owners such just and appropriate fines as it deems advisable for noncompliance with any of the provisions of the Declaration, these By-Laws or the Rules and Regulations.  All such fines shall be added to and shall constitute Common Charges payable by such Unit Owner.

**Section 7.  Foreclosure of Liens for Unpaid Common Charges.**  In any action brought to foreclose a lien on a Unit for unpaid Common Charges, the Unit Owner shall be required to pay a reasonable rental for the use and occupancy of his Unit, and the plaintiff in such foreclosure action shall be entitled to the appointment, without notice, of a receiver to collect the same.  A suit to recover a money judgment for unpaid Common Charges shall be maintainable without foreclosing or waiving the lien securing such charges.  In the event the net proceeds received on such foreclosure (after deduction of all legal fees, advertising costs, brokerage commissions and other costs and expenses incurred in connection therewith) are insufficient to satisfy the defaulting Unit Owner's obligations, such Unit Owner shall remain liable for the deficiency.

347

No Unit Owner shall be liable for the payment of any part of the Common Charges against his Unit accruing subsequent to a sale or other conveyance by him of such Unit, together with its Appurtenant Interest, provided that no violation of any provision of the Declaration or these By-Laws then exists with respect to such Unit. Any Unit Owner may, by conveying his Unit and its Appurtenant Interest to the Board of Managers, or its designee, corporate or otherwise, exempt himself from the liability for Common Charges accruing after such conveyance, subject to the terms and conditions of these By-Laws, provided that at the time of such conveyance (a) such Unit is free and clear of liens and encumbrances other than a Permitted Mortgage and the statutory lien for Common Charges and (b) no violation of any provision of the Declaration, these By-Laws or the Rules and Regulations then exists with respect to such Unit. A purchaser of a Unit shall be liable for the payment of Common Charges accrued and unpaid against such Unit prior to the acquisition by him of such Unit, except as hereinafter provided. A purchaser of a Unit at a foreclosure sale pursuant to a Permitted Mortgage against such Unit shall not be liable, and such Unit shall not be subject to a lien, for the payment of Common Charges, accrued and unpaid against such Unit prior to the acquisition by said purchaser of such Unit. However, the owner of such Unit prior to the foreclosure sale shall remain liable for the payment of all unpaid Common Charges which accrued prior to such sale.

Section 8. **Statement of Common Charges.** The Board of Managers shall promptly provide any Unit Owner, so requesting the same in writing, with a written statement of all unpaid Common Charges due from such Unit Owner.

Section 9. **Maintenance and Repairs.**

(a) Each Unit Owner shall maintain his Unit in good working order and condition, ordinary wear and tear excepted. All maintenance, repairs and replacements in or to any Unit (other than maintenance of and repairs to any Common Elements contained in the Unit), any installations to the exterior of the Building made by any Unit Owner, and any electrical, plumbing, heating and air conditioning fixtures in the Unit (other than those constituting Common Elements), whether structural or nonstructural, ordinary or extraordinary (including, without limitation, painting and decoration of the Unit), shall be performed by the Unit Owner of such Unit, at the Unit Owner's sole cost and expense, except as provided in Section 12 hereof and except as set forth below. All repairs and replacements shall be of a quality or class equal to the original work or construction. Each Unit Owner shall give the Board of Managers prompt notice of any defect in the plumbing, heating and electrical systems in his Unit after actual notice thereof by such Unit Owner. Each Unit Owner shall perform such construction, alterations or improvements to its Unit and the Common Elements as from time to time shall be necessary to render its occupancy of such Unit lawful. The exterior surface of all windows deemed a part of a Unit shall be washed and cleaned by the owner thereof. Prior to the issuance of a permanent certificate of occupancy for the Building following completion of the rehabilitation and construction as described in the Plan, no Unit Owner other than Declarant and its designees shall make any alterations or improvements (by himself or with any of his contractors) to such Unit

348

Owner's Unit, including, without limitation, installation of interior walls or partitions, without the prior written consent of Declarant.

(b) Except as provided in Section 9 above, or as applicable to a Limited Common Element, or as elsewhere provided in these By-laws or in the Declaration, all maintenance of, replacement of and repairs to the exterior walls of the Building and the Common Elements and infill of lot line windows, if required, shall be performed by the Board of Managers and the cost and expense thereof shall be charged as a Common Expense as provided in these By-Laws. In making such repairs or replacements, the Board of Managers or its designee shall make all reasonable efforts (i) to minimize any interference with the Unit Owners' use and enjoyment of and business conducted in their Units and (ii) to conceal in the walls, floors or ceilings, or if not feasible, box in without materially reducing usable areas of the affected Unit or its ceiling height, any pipes or conduits installed by the Board of Managers.

(c) If any maintenance of, replacement of or repairs to the Property or any part thereof are necessitated by the negligence of (i) any Unit Owner (including, without limitation, the owner of Residential Unit 17), his tenants or visitors or occupants of the Unit, then the entire cost thereof shall be borne by such Unit Owner and shall be assessed by the Board of Managers against such Unit Owner as a Common Charge or (ii) the Board of Managers, then the entire cost thereof shall be a Common Expense.

**Section 10. Performance of Unit Owners' Obligations and Injunctive Relief.** If any Unit Owner defaults in any of his obligations under the Declaration, these By-Laws or the Rules and Regulations other than the obligation to pay Common Charges, then in such event the Board of Managers may send to such Unit Owner a notice specifying the default. If within thirty (30) days after the service of such notice upon the Unit Owner, such Unit Owner fails to cure such default or, in the case of a default not reasonably susceptible to cure within such period, fails to commence to cure such default within such thirty (30) day period and thereafter prosecute such cure to completion with due diligence, then the Board of Managers or its designee may enter the Unit and cure such default and the Board of Managers shall be entitled to seek injunctive relief against such defaulting Unit Owner. All sums expended and all costs and expenses incurred in connection with the curing of such default together with interest thereon at the rate of 2% per month (but in no event in excess of the maximum rate permitted by law) shall be added to and shall constitute a Common Charge against such Unit Owner.

**Section 11. Additions, Alterations or Improvements by the Board of Managers.** Whenever in the judgment of the Board of Managers the Common Elements or the exterior walls of the Building shall require additions, alterations or improvements costing in excess of $100,000.00 in the aggregate in any fiscal year, then such additions, alterations or improvements shall not be made unless first approved by Unit Owners owning Units having an aggregate Common Interest of in excess of 75% of the Common Interests of all the Units and a Majority of the Mortgage Representatives (as defined in Article VI, Section 15). Any additions, alterations or

improvements to the Common Elements costing in the aggregate $100,000.00 or less in any fiscal year may be made by the Board of Managers without the approval of the Unit Owners provided same are reasonably necessary to the operations of the Property as a first class building and to the uses to which it is then subject. The cost and expense of any addition, alteration or improvement to the Common Elements shall, except as otherwise provided in the Declaration and these By-Laws including without limitation the Rules and Regulations thereunder, constitute part of the Common Expenses. In making such additions, alterations and improvements, the Board of Managers or its designee shall make all reasonable efforts (i) to minimize any interference with the Unit Owners' use and enjoyment of and any business conducted in their Units and (ii) to conceal in the walls, floors or ceilings or if not feasible, box in without materially reducing usable areas of the affected Unit or its ceiling height, any pipes or conduits installed by the Board of Managers (other than in the portions of the cellar of the Building which are part of the Common Elements).

Section 12. **Additions, Alterations or Improvements by Unit Owners**. Except as permitted in the Declaration:

(a)    No Unit Owner shall make any structural addition, alteration or improvement in or to his Unit, without the prior written consent thereto of the Board of Managers, which consent shall not be unreasonably withheld. The Board of Managers shall have the obligation to answer any written request by a Unit Owner for approval of a proposed structural addition, alteration or improvement in such Unit Owner's Unit within thirty (30) days after such request, and failure to do so within the stipulated time shall constitute a consent by the Board of Managers to the proposed addition, alteration or improvement. Any application to any department of the City of New York or to any other governmental authority for a permit to make an addition, alteration or improvement in or to any Unit permitted hereunder shall be executed by the Board of Managers, without, however, incurring any liability on the part of the Board of Managers to any contractor, subcontractor or materialman on account of such addition, alteration or improvement, or to any person having any claim for injury to person or damage to property arising therefrom.

(b)    No Unit Owner shall, without obtaining the prior written consent of the Board of Managers construct any additions to the exterior of his Unit (including the exterior walls of the Building encompassing the Unit), make structural changes to any of the Common Elements, or excavate or otherwise alter Common Elements, whether such Common Elements be located in, under or adjacent to the Building.

Section 13. **Right of Access**. A Unit Owner shall give access to his Unit to the Condominium Board, the manager and/or the managing agent and/or any other person(s) authorized by the Board of Managers, the manager or the managing agent, for the purpose of (i) making inspections or for the purpose of correcting any condition originating in his Unit and threatening another Unit or a Common Element, (ii) performing installations, alterations or repairs to the mechanical or electrical services or other Common Elements in his Unit or elsewhere on the Property, (iii) correcting any

350

condition which violates the provisions of any mortgage covering another Unit, (iv) removing violations of governmental laws or regulations against any part of the Property, (v) curing any defaults under the Declaration and the By-Laws and (vi) removal of trash from the trash rooms, provided that in each case, except as provided below, the requests for entry are made at least one (1) day in advance. Such right of access shall be exercised in such a manner as will not unreasonably interfere with the normal conduct of business in or use of the Unit. In case of removal of trash from the trash rooms and in the case of an emergency, such right of access shall be immediate, without advance notice and may occur whether the Unit Owner is present at the time or not. The foregoing shall not be deemed as prohibiting a Unit Owner from having a representative present when such access is given to the Board of Managers. No Unit Owner shall impede the removal of trash from his trash room by the Condominium Board, the managing agent or any designee of either of the foregoing and the Unit Owner shall have no right to require that he or a representative be present during such trash removal.

Section 14. **Rules and Regulations**. Annexed hereto as Schedule A and made a part hereof are rules and regulations concerning the use of the Units and Common Elements (such rules and regulations as amended from time to time are sometimes herein referred to as the "Rules and Regulations"). Except as provided in the Declaration, the Board of Managers may from time to time amend such Rules and Regulations in such manner as shall be reasonably necessary for the proper operation of the Building, except that (i) a Majority in Common Interest of the Unit Owners may overrule the Board of Managers with respect to any such amendment and (ii) no such amendment may be made without the prior written consent of (x) a Majority of the Mortgage Representatives, if any, which consent shall not be unreasonably withheld or delayed, and (y) the Construction Lender, for so long as it has a lien on any Unit, and (iii) no amendment may be made which may have an adverse affect on the Commercial Unit Owner, or Declarant or its designees, or the Units owned by any of them, unless approved in writing by such Commercial Unit Owner, the Declarant or its designees, as the case may be. Copies of such Rules and Regulations as amended shall be furnished by the Board of Managers to each Unit Owner not less than thirty (30) days prior to the effective date thereof. The terms "amend," "amended" or "amendment," as used in this Section, shall also mean deleting or adopting a rule or regulation.

Section 15. **Real Estate Taxes**. Except as provided below, until the Units are separately assessed for real estate tax purposes, the Board of Managers as agent of the Unit Owners shall promptly pay all real estate taxes levied with respect to the Property as a Common Expense and the Common Charges collected from Unit Owners to meet this Common Expense shall be earmarked for this purpose.

Section 16. **Water Charges and Sewer Rents**. If there are water charges and sewer rents assessed against the Property, then, unless and until such charges are separately billed to each Unit Owner by the appropriate authority, such charges shall promptly be paid by the Board of Managers as a Common Expense. If any of the Units are separately metered or submetered for water then the owner thereof shall directly

351

pay to the proper authority the water charges and sewer rents computed on the basis of the consumption metered for his Unit  and such Unit Owner shall not be responsible for paying water and sewer charges as part of his Common Charges.  The Commercial Units will bear a pro-rata share of the water charges allocable to the Common Elements, initially estimated by Laszlo Bodak Engineer P.C. at $500, based on their respective Common Interest.  It is anticipated that no water will be supplied to Commercial Units B and C and that such Unit Owners will not bear any additional expense therefor.  Unless separately metered or sub-metered, the reasonable cost of water and sewer allocable to Commercial Unit A shall be based on an energy survey to be obtained by the Owner of such Unit when occupancy of such Unit commences.

Section 17. **Gas**. Gas may be supplied by the public utility company serving the area to each Unit for cooking and/or laundry purposes through separate meters and the owner of such Unit shall be required to pay the bills for gas consumed or used in his Unit.  To the extent that gas is supplied to more than one Unit measured by a meter for such Units, the cost of such gas shall be a Common Expense payable by the owners of such Units.  It is anticipated that no gas will be supplied to Commercial Units B and C and that such Unit Owners will not bear any additional expense therefor.  Unless separately metered or sub-metered, the reasonable cost of gas allocable to Commercial Unit A shall be based on an energy survey to be obtained by the Owner of such Unit when occupancy of such Unit commences.

Section 18. **Electricity**. Electricity for the Units shall be supplied by the public utility company serving the area directly to each Unit through a separate meter and the owner of such Unit shall be required to pay the bills for electricity consumed or used in his Unit.  If one such meter measures the consumption of electricity in more than one Unit, then all such Units shall pay their pro rata share (as reasonably determined by the Board of Managers) of the consumption of electricity measured by such meter.  Except as provided in Section 9 of the Declaration, a Unit Owner shall not exceed the capacity of existing feeders, risers or wiring installations and shall not use any electrical equipment which in the reasonable opinion of the Board of Managers will overload such feeders, risers or installations.

Section 19. **Heating**. The Board of Managers shall supply heat to the Residential Units during such times as the Board of Managers shall establish from time to time, provided that heat shall be supplied at least at such times as is required by law in multiple dwellings.  The cost of furnishing same shall constitute a Common Expense payable by all Unit Owners receiving the benefit of such utility.  If any Commercial Unit shall be separately heated, it shall no longer be responsible to pay any portion of the Common Charges allocable to heat.

Section 20. **Vault Charges**. All license fees and all periodic taxes and charges for vaults or other protrusions beyond the Building line assessed against the Property shall be fairly and equitably apportioned by the Board of Managers between or among the Units having the right to use such vault or other protruding space.

**Section 21. <u>Utilities Serving the Common Elements</u>.** The costs and expense of heat, water and sewer, electricity and gas serving or benefitting the Common Elements shall be a Common Expense to be borne by all Unit Owners.

**Section 22. <u>Interruption in Utilities</u>.** The Board of Managers shall have the right to interrupt all utilities for the purposes of dealing with accidents, strikes and repairs, alterations, improvements, and the like. The Board of Managers shall have no liability to any Unit Owner for any such interruption. However, the Board of Managers shall make all reasonable efforts to minimize the extent of such interference.

**Section 23. <u>Miscellaneous Budget Items.</u>** Notwithstanding anything to the contrary herein, the Commercial Unit Owner will share, based upon its Common Interests  fifty percent (50%) of the cost of the budget items for (i) repairs, maintenance and supplies; (ii) management (iii) the portion of the elevator contracts allocable to one elevator. The Commercial Unit Owner shall also pay a pro rata share (based on its Common Interests) of the service contracts for the sprinkler/fire alarm system, and exterminating, but not any other service contracts. The Commercial Unit Owner shall bear a pro rata share (based on the aggregate Common Interests of the Commercial Units) of the cost of the concierge/superintendent and one porter but not any other employee. The Commercial Unit Owner shall pay an amount for "contingency" in the proportion that the Common Expenses payable by the Commercial Unit Owner for all budget items (other the "contingency") bears to all Common Expenses (other than "contingency"). In addition, if the Board of Managers incurs any increase in insurance premiums as a direct result of an increase in insurance risk resulting from any special use of a Commercial Unit, the Commercial Unit Owner shall bear the cost of any such increase in insurance premiums over the premiums that would be charged but for the extra insurance risk due to the use of such Commercial Unit.

## Article VI

### Selling, Leasing and Mortgaging of Units

**Section 1. <u>Notice to Board of Managers</u>.** A Unit Owner who mortgages his Unit shall notify the Board of Managers of the name and address of his mortgagee and shall file a conformed copy of the note and mortgage with the Board of Managers. Subject to the priority of the lien of a Permitted Mortgage with respect to all unpaid sums due under such Permitted Mortgage and such other rights, if any as may appertain to a Permitted Mortgagee under Sections 339-z of the Real Property Law of the State of New York, the rights of any mortgagee of a Unit shall be subordinate to the terms and provisions of the Declaration, By-Laws and Rules and Regulations, including, without limitation, the provisions of Section 9 of the Declaration, and any such mortgage that fails to provide for such subordination shall nonetheless be deemed to provide for such subordination; provided that no revocation or amendment to Section 339-z of the Real Property Law of New York shall affect such lien priority. Although no further instrument shall be required to effectuate such subordination, each mortgagee of a

Unit, by accepting such mortgage, agrees to execute and deliver any instruments and documents requested to be executed and delivered by the Board of Managers in connection with the confirmation of such subordination, and, in the event such mortgagee fails to execute and deliver any such instruments or documents, its acceptance of such mortgage shall be deemed to constitute its appointment of the Board of Managers as its true and lawful attorney-in-fact in its name, place and stead to execute and deliver any such instruments and documents, such power being coupled with an interest.  A Unit Owner who satisfies a mortgage covering his Unit shall also notify the Board of Managers thereof and shall file a conformed copy of the satisfaction of mortgage with the Board of Managers.  The Board of Managers shall maintain the information received pursuant to this Section 1 in a book entitled "Mortgages of Units."

Section 2.  **Notice of Default and Unpaid Common Charges**.  Whenever so requested in writing by the mortgagee of a Unit, the Board of Managers shall promptly report to such mortgagee any default in the payment of Common Charges or any other default by the Unit Owner of such Unit under the provisions of the Declaration or these By-Laws, which default may to the Board's knowledge then exist.  The Board of Managers, when giving notice to a Unit Owner of any such default, shall also send a copy of such notice to each holder of a mortgage covering such Unit whose name and address shall have theretofore been furnished to the Board of Managers.

Section 3.  **Performance by Mortgagees**.  The Board of Managers shall accept payment of any sum or performance of any obligation by any mortgagee of a Unit Owner required to be paid or performed by such Unit Owner pursuant to the pro-visions of the Declaration, these By-Laws or the Rules and Regulations with the same force and effect as though paid or performed by such Unit Owner.

Section 4.  **Examination of Books**.  Each Unit Owner and each mortgagee of a Unit shall be permitted to examine the books of account of the Condominium at reason-able times, on business days, but not more than once a month.

Section 5.  **Selling and Leasing**.  Except as provided in Section 10 of this Article VI no Residential Unit Owner may sell or lease his Residential Unit, without complying with the following provisions:

Any such Residential Unit Owner who receives a bona fide offer to (a) purchase his Unit covered by the provisions of this Section 5 ("Offeree Unit") together with its Appurtenant Interest or (b) lease his Offeree Unit (such offer to purchase or lease an Offeree Unit, as the case may be, is called an "Offer", the party making any such Offer is called an "Offeror" and the owner of the Offeree Unit to whom the Offer is made is called an "Offeree"), which he intends to accept shall give notice by certified or registered mail to the Board of Managers of the receipt of such Offer.  Said notice shall also state the name and address of the Offeror, the terms of the proposed transaction (including, but not limited to, the intended closing date in the event of a purchase or the intended occupancy date in the event of a lease) and such other information as the Board of

354

Managers may reasonably require.  The giving of such notice to the Board of Managers shall constitute an offer by such Unit Owner to sell (or lease, as the case may be) his Offeree Unit to the Board of Managers, or its designee, on behalf of all other Unit Owners, upon the same terms and conditions as contained in such Offer and shall also constitute a representation and warranty by the Offeree who has received such Offer, to the Board of Managers on behalf of all Unit Owners, that such Offeree believes the Offer to be bona fide in all respects.  The Offeree shall submit in writing such further information with respect thereto as the Board of Managers may reasonably request.  Not later than fifteen (15) days after receipt of such notice together with such further information as may have been requested, the Board of Managers may elect, by sending written notice to such Offeree before the expiration of said fifteen (15) day period, by certified or registered mail, to purchase such Offeree Unit together with its Appurtenant Interest or to lease such Offeree Unit, as the case may be (or to cause the same to be purchased or leased by its designee), on behalf of all Unit Owners, upon the same terms and conditions as contained in the Offer and as stated in the notice from the Offeree.

If the Board of Managers shall timely elect to purchase such Offeree Unit together with its Appurtenant Interest or to lease such Offeree Unit, or to cause the same to be purchased or leased by its designee, title shall close or a lease shall be executed at the office of the attorneys for the Board of Managers, in accordance with the terms of the Offer, within forty-five (45) days after the giving of notice by the Board of Managers of its election to accept the aforesaid Offer, and the Board of Managers shall then be required to perform or cause to be performed all of the terms of the Offer (except as otherwise expressly set forth in this Article VI) including, but not limited to, payment of a Down Payment or advance rentals and security deposits, or closing of title or acceptance of occupancy, as the case may be and such closing of title or the commencement of the term of the lease shall be on the date set forth in the notice to the Board of Managers referred to in this Section 5 of Article VI as the intended closing date or commencement date, as the case may be.  If pursuant to such Offer, the Offeror was to assume, or take title to the Offeree Unit subject to, the Offeree's existing mortgage or mortgages, the Board of Managers may purchase the Offeree Unit and assume, or take title to the Offeree Unit subject to, said existing mortgage or mortgages, as the case may be.  At the closing, the Offeree, if such Offeree Unit together with its Appurtenant Interest is to be sold, shall convey the same to the Board of Managers or its designee, corporate or otherwise, on behalf of all other Unit Owners, by deed in the form required by Section 339-0 of the Real Property Law of the State of New York with all tax and/or documentary stamps affixed at the expense of such Offeree, who shall also pay all other taxes arising out of such sale.  Real estate taxes (including water charges and sewer rents if separately assessed), mortgage interest, if any, and Common Charges shall be apportioned between the Offeree and the Board of Managers, or its designee, corporate or otherwise, as of the closing date.  In the event such Offeree Unit is to be leased, the Offeree shall execute and deliver to the Board of

355

Managers, or its designee, a lease between the Offeree, as landlord, and the Board of Managers, or its designee, as tenant, covering such Offeree Unit, for the rental and term contained in such Offer.

If the Board of Managers, or its designee shall fail to accept such Offer within fifteen (15) days after receipt of notice, as aforesaid, the Offeree shall have an additional ninety (90) days (immediately following such fifteen 15 day period) to accept the Offer by executing and delivering a contract or lease, as the case may be. If the Offeree shall not, within such ninety (90) day period, accept in writing the Offer or if the Offeree shall accept the Offer within such ninety (90) day period but such sale or lease, as the case may be, shall not be consummated on or before the intended closing date or commencement date of the term of the lease, as the case may be, which is set forth in the notice to the Board of Managers referred to in this Section 5 of Article VI, then, should such Offeree thereafter elect to sell or lease such Offeree Unit, as the case may be, the Offeree shall be required to comply again with all the terms and provisions of this Section.

Any deed to an Offeror shall be deemed to provide that the acceptance thereof by the grantee shall constitute an assumption of the provisions of the Declaration, these By-Laws and the Rules and Regulations, as the same may be amended from time to time.

Any lease executed in connection with the acceptance by an Offeree of any Offer to lease an Offeree Unit shall be consistent with these By-Laws and shall provide that it may not be modified, amended, extended or assigned without the prior consent in writing of the Board of Managers, that the tenant shall not assign his interest in such lease or sublet the demised premises or any part thereof without the prior consent in writing of the Board of Managers and that the Board of Managers shall have power to terminate such lease and/or to bring summary proceedings to evict the tenant in the name of the landlord thereunder, in the event of (i) a default by tenant in the performance of its obligations under such lease or (ii) a foreclosure of the lien granted by Section 339-z of the Real Property Law of the State of New York.

Any lease executed by the Board of Managers as tenant shall provide that the Board of Managers may enter into a sublease of the premises without the consent of the landlord.

Any purported sale or lease of an Offeree Unit in violation of this Section 5 of Article VI shall be voidable at the election of the Board of Managers and if the Board of Managers shall so elect, the Offeree shall be deemed to have authorized and empowered the Board of Managers to institute legal proceedings to evict the purported tenant (in case of an unauthorized leasing), in the name of the said Offeree as the purported landlord. Said Offeree shall reimburse the

Board of Managers for all expenses (including, without limitation, attorneys' fees and disbursements) incurred in connection with such proceedings.

**Section 6.  Consent of Unit Owners to Purchase or Lease of Offeree Units by Board of Managers.**  The Board of Managers shall not exercise any option hereinabove set forth to purchase or lease any Offeree Unit without the prior approval of a Majority in Common Interest of Unit Owners.  However, the Board of Managers shall have the right to release or waive such option without the prior approval of a Majority in Common Interest of Unit Owners.

**Section 7.  No Severance of Ownership.**  No Unit Owner shall execute any deed, mortgage or other instrument conveying or mortgaging title to his Unit without including therein its appurtenant Common Interest, it being the intention to prevent any severance of such combined ownership.  Any such deed, mortgage or other instrument purporting to affect one or more of such interests without including all such interests shall be deemed and taken to include the interest or interests so omitted even though the latter shall not be expressly mentioned or described therein.  No part of the Common Interest appurtenant to any Unit may be sold, conveyed or otherwise disposed of, except as part of a sale, conveyance or other disposition of the Unit to which such interest is appurtenant or as part of a sale, conveyance or other disposition of such part of the appurtenant Common Interests of all Units.  Nothing in this Section shall prohibit the lease of any Unit without the simultaneous lease of its appurtenant Common Interest.

**Section 8.  Waiver of Right of Partition with Respect to Units Acquired on Behalf of Unit Owners as Tenants-in-Common.**  If any Unit shall be acquired by the Board of Managers, or its designee, on behalf of all Unit Owners, as tenants-in-common, all such Unit Owners shall be deemed to have waived all rights of partition with respect to such acquired Unit.

**Section 9.  Financing of Purchase of Offeree Units by Board of Managers.**  The purchase of any Offeree Unit by the Board of Managers or its designee, on behalf of all Unit Owners, may be made from the funds deposited in the capital and/or expense accounts of the Board of Managers.  If the funds in such account are insufficient to effectuate any such purchase, the Board of Managers may levy an assessment against each Unit Owner, in proportion to his respective Common Interest, as a Common Charge, and/or the Board of Managers may, in its discretion, finance the acquisition of such Offeree Unit, provided, however, that no such financing may be secured by an encumbrance or hypothecation of any portion of the Property other than the Offeree Unit to be purchased together with its Appurtenant Interest.

**Section 10.  Exceptions.**  The provisions of Section 5 of Article VI shall not apply to (A) any Commercial Unit or any condominium units created by subdivision or combination of a Commercial Unit from time to time, or any part thereof, (B) any Unit transferred by a Unit Owner by gift, devise, will or intestacy, or (C) any lease, sale or conveyance of any Offeree Unit together with its Appurtenant Interest by (1) the Unit

357

Owner thereof to his spouse, adult children, parents, adult siblings or to any one or more of them or to any affiliate of the Unit Owner thereof; (2) any Commercial Unit Owner, Declarant or any of its designees; (3) the Board of Managers; or (4) the sale, transfer or lease of a Unit by or to a mortgagee or its nominee (including, without limitation, a foreclosure); provided, however, that each succeeding Offeree shall be bound by, and his Offeree Unit subject to, the provision of this Article VI. The term "affiliate", when used with respect to any Unit Owner, means an individual who (or entity which) owns more than 50% of the legal or beneficial interest in such Unit Owner, or any entity in which such Unit Owner owns more than a 50% interest, legal or beneficial.

**Section 11.  Gifts and Devises, etc.**  Any Unit Owner shall be free to convey or transfer his Unit by gift, or may devise his Unit by will or have his Unit pass by intestacy, without restriction, provided, however, that each succeeding Unit Owner shall be bound by, and his Unit subject to, the provisions of this Article VI.

**Section 12.  Payment of Assessments.**  No Unit Owner shall be permitted to convey, mortgage, pledge, hypothecate or lease his Unit unless and until he shall have paid in full to the Board of Managers all unpaid Common Charges theretofore assessed by said Board against such Unit and until such Unit Owner shall have satisfied all unpaid liens against his Unit, other than any mortgages.

**Section 13.  Mortgage of Units.**  Each Unit Owner shall have the right to mortgage his Unit without restriction.  However, the Unit Owner shall comply with the provisions of Section 1 of this Article VI.

**Section 14.  Permitted Mortgage.**  The term "Permitted Mortgagee" shall mean a holder of a Permitted Mortgage.  The term "Permitted Mortgage" shall mean any first mortgage of record against a Unit.  For so long as the Construction Loan or any portion thereof is outstanding, the Construction Loan shall be deemed to be a Permitted Mortgage and the Construction Lender shall be deemed to be a Permitted Mortgagee.

**Section 15.  Mortgage Representatives.**  The term "Mortgage Representatives" shall mean the representatives of the holders of all mortgages encumbering Units, designated by the holders of "Institutional Mortgages" (defined below) in accordance with the terms of this Article VI, Section 15.

Except as otherwise provided for herein or in the Declaration, no consent or approval by any mortgagee shall be required with respect to any determination or act of the Condominium Board or any Unit Owner, provided, however, that nothing contained herein shall be deemed to limit or affect the rights of any mortgagee against his mortgagor.  In the event that any such consent or approval shall be expressly required pursuant to the terms of the Declaration or these By-Laws, the decision of a majority of Mortgage Representatives, if any, designated pursuant to the terms of this Section 15 of Article VI, shall be deemed binding on the holders of all mortgages encumbering Units.

The holders of Institutional Mortgages constituting a majority in principal amount of all Institutional Mortgages may, if they so elect designate not more than three Mortgage Representatives by giving written notice thereof to the Condominium Board, which Mortgage Representatives shall thereby be empowered to act as the representatives of the holders of all mortgages encumbering Units with respect to any matter requiring the consent or approval of mortgagees under the Declaration or these By-Laws. Any designation of a Mortgage Representative pursuant to the terms of this Article VI, Section 15, shall be effective until any successor Mortgage Representative is designated pursuant to the terms hereof and written notice thereof is given to the Condominium Board. Unless otherwise required by law, no holders of mortgages encumbering Units other than Permitted Mortgagees who hold Institutional Mortgages shall be entitled to participate in the designation of Mortgage Representatives, but all holders of mortgages encumbering Units shall be subject to all determinations made by the Mortgage Representatives pursuant to the terms of the Declaration or these By-Laws.

The term "Institutional Lender" shall mean (i) the Construction Lender, for so long as the Construction Loan is a lien on any Unit (ii) a savings bank, savings and loan association, bank or trust company, credit union, insurance company, real estate investment trust, or mortgage trust, or (iii) a federal, state, municipal, teacher's or union employee, welfare, pension or retirement fund or system.

## Article VII

### Eminent Domain

Section 1. **Condemnation.** In the event of a taking in condemnation or by eminent domain of part or all of the Common Elements, the award made for such taking shall be payable to the Board of Managers if such award amounts to $100,000.00 or less, and to the Insurance Trustee if such award amounts to more than $100,000.00 If 75% or more in Common interest of all Unit Owners duly and promptly approve the repair and restoration of such Common Elements, the Board of Managers shall arrange for the repair and restoration of such Common Elements, and the Board of Managers, or the Insurance Trustee, as the case may be, shall disburse the proceeds of such award to the contractors engaged in such repair and restoration in appropriate progress payments. If the net proceeds of any such award are insufficient to cover the cost of any repairs or restorations, the deficit will be a Common Expense. If 75% or more in Common Interest of all Unit Owners do not duly and promptly approve the repair and restoration of such Common Elements, or if there are excess proceeds remaining after such repair or restoration, then in such event the Board of Managers, or the Insurance Trustee, as the case may be, shall disburse the net proceeds of such award in the same manner as they are required to distribute insurance proceeds where there is no repair or restoration of the damage, as provided in Section 3 of Article V of these By-Laws. In the event of a partial taking by condemnation or by eminent domain which results in a disproportionate taking of the space of each Unit so that one Unit is left with proportionately less space compared to the other Unit than was the case prior to such

359

taking, then the Common Interests of the Unit Owners shall be equitably adjusted by the Board of Managers.

**Section 2.   Awards for Trade Fixtures and Relocation Allowances.**  Where all or a part of the Condominium is taken in condemnation or by eminent domain, each Unit Owner shall have the exclusive right to claim all of the award made for trade fixtures installed by such Unit Owner, and any relocation, moving expense or other allowance of a similar nature designed to facilitate relocation of a displaced business concern.

## Article VIII

### Records

**Section 1.   Records and Audits.**  The Board of Managers or the managing agent shall keep detailed records of the actions of the Board of Managers and the managing agent, minutes of the meetings of the Board of Managers, minutes of the meetings of the Unit Owners, and financial records and books of account of the Condominium, including a chronological listing of receipts and expenditures, as well as a separate account for each Unit which, among other things, shall contain the amount of each assessment of Common Charges against each Unit, the date when due, the amounts paid thereon, and the balance remaining unpaid.  An annual report of the receipts and expenditures of the Condominium, certified by an independent certified public accountant, shall be rendered by the Board of Managers to all Unit Owners and to all mortgagees of Units who have requested the same, within four (4) months after the end of each fiscal year.  The cost of such report shall be paid by the Board of Managers as a Common Expense.

## Article IX

### Miscellaneous

**Section 1.   Notices.**  All notices hereunder shall be sent by registered or certified mail to the Board of Managers c/o the managing agent, or if there be no managing agent, to the office of the Board of Managers or to such other address as the Board of Managers may hereafter designate from time to time, by notice in writing to all Unit Owners and to all mortgagees of Units.  All notices to any Unit Owner shall be sent by registered or certified mail to the Property or to such other address as may have been designated by him from time to time, in writing, to the Board of Managers.  All notices shall be deemed to have been given or served when sent as provided above as of the date of mailing, except notices of change of address which shall be deemed to have been given when received.

360

**Section 2.   Severability.**  If any provision of these By-Laws is invalid or unenforceable against any person, party or under certain circumstances, the remainder of these By-Laws and the applicability of such provision to other persons, parties or circumstances shall not be affected thereby.  Each provision of these By-Laws shall, except as otherwise herein provided, be valid and enforced to the fullest extent permitted by law.

**Section 3.   Captions.**  The captions herein are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of these By-Laws, or the intent of any provision hereof.

**Section 4.   Gender.**  The use of the masculine gender in these By-Laws shall be deemed to include the feminine gender and the use of the singular shall be deemed to include the plural, whenever the context so requires.

**Section 5.   Waiver.**  No restriction, condition, obligation or provision contained in these By-Laws including without limitation the Rules and Regulations shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches thereof which may occur.

**Section 6.   Title to Units.**  Title to Units may be taken in the name of an individual, the names of two or more persons as tenants in common, joint tenants or tenants by the entireties, in the name of a corporation, partnership, association, trustee or other legal entity, or any combination of any of the foregoing.

**Section 7.   Successors and Assigns.**  The rights and/or obligations of the Unit Owners as set forth in these By-Laws and the Declaration shall inure to the benefit of and be binding upon the Board of Managers and the Unit Owners and their successors and assigns.

**Section 8.   Insurance Trustee.**  The Construction Lender, or its successors, assigns, or designee, at its option, shall be the Insurance Trustee so long as the Construction Lender is the holder of a certain mortgage made by Declarant to such Construction Lender, and thereafter a bank or trust company in the State of New York, designated by the Board of Managers and having a capital surplus and undivided profits of $500,000,000 or more.  In the event the Insurance Trustee resigns or is replaced by the Board of Managers, the Board of Managers shall appoint a new Insurance Trustee which shall be a bank or trust company having an office located in the State of New York having a capital surplus and undivided profits of $500,000,000 or more.  The Board of Managers shall pay the fees and disbursements of any Insurance Trustee and such fees and disbursements shall constitute a Common Expense.  The Insurance Trustee shall hold all such proceeds in accordance with Section 254(4) of the New York Real Property Law.

**Section 9.   Consents.**  Wherever in this Declaration or these By-Laws the consent of the Board of Managers is provided, such consent shall be sufficient and

effective if given by the Board of Managers and the consent of the Unit Owners shall, unless otherwise provided in the Declaration or these By-Laws, not be required.

## Article X

### Amendments to By-Laws

**Section 1.  Amendments to By-Laws.**  Except as provided in the Declaration and below, these By-Laws may be amended by the vote of not less than 80% in number and in Common Interest of all Unit Owners, at a meeting of the Unit Owners duly held for such purpose, provided, however, that (i) if Declarant or its designees and a majority in Common Interest of the Commercial Unit Owners, as the case may be, shall not have voted in favor of such amendment, then such amendment shall not be effective unless reasonably necessary or convenient to the conduct of the affairs of the Condominium and/or operation of the Property and such amendment shall not decrease the rights of any Commercial Unit Owner, the Declarant or its designees or increase the obligations of any Commercial Unit Owner, Declarant or its designees and (ii) such amendment shall not be effective against a holder of a mortgage of record affecting a Unit, unless a Majority of the Mortgage Representatives shall consent thereto in writing which consent shall not be unreasonably withheld or delayed, and, as to any Unit encumbered by the Construction Loan, the Construction Lender consents thereto; however the Construction Lender may grant or withhold its consent as it sees fit) .  Notwithstanding anything to the contrary contained herein, without the consent of every Unit Owner affected by such amendment, (a) no provision of these By-Laws (including, without limitation, the Rules and Regulations) relating to the use of Units or appurtenant Common Interests may be amended, (b) no By-Law may be amended which would in any way affect the rights of the Commercial Unit Owner or Declarant or its designees under Section 9 or Section 11 of the Declaration and (c) the provisions of this Article X may not be amended.  The terms "amend," amended" or "amendment" as used in these By-Laws shall also be deemed to mean deleting a provision of the By-Laws or adopting a new By-Law.

## Article XI

### Conflicts

These By-Laws (including without limitation the Rules and Regulations) are intended to comply with the requirements of Article 9B of the Real Property Law of the State of New York and all other applicable laws.  In case any of these By-Laws or any provision of the Rules and Regulations shall conflict with the provisions of said statute, the Declaration or any other applicable law, then the provisions of said statute, the Declaration or such other applicable law, as the case may be, shall control.