UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————X

AMERICAN INSURANCE COMPANY a/s/o  
MARIAH CAREY,

            Plaintiff,

- against -

CORN ASSOCIATES, LLC, THE FRANKLIN TOWER
CONDOMINIUM, KATZ METAL FABRICATORS, INC.,
OLYMPIC PLUMBING AND HEATING III CORP.,
And SAMCO PLUMBING, INC.,

            Defendants.
————————————————————————X

Case No.: 07 CIV 8604
(WHP) (AJJP)

**FRANKLIN TOWER'S
RULE 56.1 STATEMENT**

Defendant Franklin Tower Condominium ("Franklin Tower"), by its attorneys, White Fleischner & Fino, LLP, provide the following statement of material facts to which Franklin Tower contents there is no genuine issue to be tried.

In its statement of material facts, Franklin Tower refers below to the affidavit of Frederick Wodin with Exhibits ("**Wodin Aff.**)".

### FRANKLIN TOWER'S STATEMENT OF MATERIAL FACTS

1. This matter arises out of a water leak that occurred at the Franklin Tower building ("Franklin Tower"), located at 90 Franklin Street in New York, New York. Plaintiff, American Insurance Company ("American"), as the subrogee of Mariah Carey the owner of Units 16 and 17 and Sinclair C.S. Beecham, the owner of Unit 13 (the " Unit Owners"), filed a Complaint on October 4, 2007 in the United States District Court, Souther District of New New York against the condominium sponsor, defendant Corn Associates LLC ("Corn"),

which sponsored the conversion of the building from a commercial property to condominiums for residential occupancy and also against Katz Metal Fabricators, a contractor which performed work in connection with the conversion (the "Project") (A true copy of the Second Amended Complaint is attached hereto as Exhibit A).

2. Also named as defendants in the Complaint were two contractors on the Project, defendant Olympic Plumbing and Heating III Corp. and Samco Plumbing, Inc., each of which Plaintiff discontinued against shortly after filing and serving the Complaint. Finally, plaintiff named Franklin Tower Condominium, the condominium association for the subject building. (See Exhibit A). Franklin Tower's Answer is annexed hereto as Exhibit "B").

3. Plaintiff, American Insurance Company ("AIC"), alleges that on April 2, 2005, water leaked into two condominium units, one owned by Mariah Carey ("Carey") and another by Sinclair Beecham ("Beecham"). It further alleges that water leaked into the Carey unit on July 8, 2005. AIC alleges that it paid Carey and Beecham for losses arising out of the incidents. In its Complaint, AIC states that it is seeking, as subrogee of Carey and Beecham, recovery from Franklin Tower Condominium and others while alleging that the defendants were negligent. (Exhibit A).

4. At the time of the leak, the Owners were insured for the risk of casualty by American. As a result of the leaks, American paid certain claims to its insureds. American alleges that the leak resulted in damage to Plaintiff's insureds' property including what American describes as Improvements and Betterments within the Units (Carey and Beecham), Contents (Carey), Additional Living Expenses (Carey) and Mold Remediation

2

(Carey). (Annexed as Exhibit "C" Sworn Statements in Proof of Loss for the Carey claim and annexed as Exhibit "D" is a Sworn Statement in Proof of Loss for the Beecham claim.)

5. American has brought the instant Complaint, as subrogee of its insureds, alleging negligence on the part of the defendants, seeking recovery of the monies it has paid to its insureds. (See Exhibit A).

6. Corn Associates filed a Condominium Offering Plan in connection with the sale of twenty- five Residential Units. (**Wodin Aff.**). Plaintiff's subrogee, Mariah Carey, purchased Units 16 and 17 pursuant to the Condominium Offering Plan. (**Wodin Aff.**). Plaintiff's other subrogee, Sinclair C.S. Beecham, purchased Unit 13 pursuant to the Condominium Offering Plan (**Wodin Aff.**).

7. The Condominium Offering Plan that was effective at the time of each subrogee's purchase of their respective Residential Units is annexed to **Wodin Aff.** as Exhibit "B". In numerous provisions, the Offering Plan advises Unit Owners that they waive their insurers' rights of subrogation against the Condominium.

8. In the "Introduction" section of the Condominium Offering Plan, the plan provides:

> **Features of Condominium Ownership**
>
> * * *
>
> The Condominium shall maintain fire insurance policies insuring the Building (but not including appliances or any furniture, furnishings or other personal property in the Unit) covering the interest of the Condominium, the Board, all the Unit Owners and their mortgagees as their respective interests may appear, in an amount equal to at least eighty percent of the full replacement value of the Building exclusive of excavation and foundations and deduction for depreciation. Each Unit Owner is advised to insure the interior of his own Unit and the contents thereof, including appliances, furniture, furnishings, or other personal property within the Unit. In addition, a Unit Owner may desire

3

to obtain insurance covering his liability to others for personal injury or property damage occurring within or to his Unit.

9.      Within an attachment to a section in the Condominium Offering Plan called "Offering Prices and Related Information, Schedule A", which is known as "Footnotes To Schedule A," it states that

> In addition to the estimated Common Charges, each Unit Owner will be responsible for paying: . . . (iv) the cost of carpeting, painting and decorating his or her Unit: (v) the cost of interior repairs to and the maintenance of his or her Unit, including but not limited to, repairs to and maintenance of walls, including the exterior fact thereof, ceilings and floors and all kitchen and bathroom fixtures and appliances, and as to Unit 17, all maintenance, repairs and replacements to the portions of the roof comprising part of such Unit, which repairs shall be performed by such Unit owner; (iv) the cost of any insurance that he or she obtains covering (a) furniture, belongs, equipment and other personal property . . .

10.     In the "Rights And Obligations Of Unit Owners And Board Of Managers: Summary Of By-Laws" section of the Condominium Offering Plan, the section "Rights and Obligations of Unit Owners" states

> <u>Repairs to and Maintenance of Units, Limited Common Elements and Common Elements</u>
>
> Generally, all painting, decorating, maintenance, repairs and replacements, whether structural or non-structural ordinary or extraordinary, which are either: (a) in or to any Unit (other than to the Common Elements within the Unit) and, including, without limitation, the exterior surface of windows, electrical, plumbing, and heating fixtures, exterior installations made by the Unit Owner, will be made by the Unit Owner of such Unit at such Unit Owner's sole cost and expense, subject to the restrictions set forth in the By-Laws; (b) in or to the Common Elements and, any infill of lot line windows will be made by the Board and the and the cost and expense thereof will be charged as a Common Expense, payable by all Unit Owners; and (c) in and to any Limited Common Element, will be made by the Unit Owner having the exclusive use of such Limited Common Element, except that (a) repairs to, maintenance and replacements of the exterior walls of the Building, and (b) structural repairs to entire roof of the mechanical penthouse bulkhead shall be made by the Condominium Board and the cost thereof shall be borne by all Unit Owners as a Common Expense, as provided in the By-Laws . . .

11.     The section "Rights and Obligations of Board of Managers: Summary of By-Laws" states

Repair or Reconstruction after Fire or Other Casualty

If the Building or any part thereof is damaged or destroyed by fire or other casualty, the Board will, except as set forth below, arrange for the prompt repair and restoration thereof (but excluding machinery, appliances, fixtures, furniture, furnishings or other personal property within a Unit).

\* \* \*

**Insurance**

The Board is required to obtain and maintain, to the extent obtainable at reasonable rates and to the extent determined by the Board to be appropriate, the following insurance: (a) fire insurance with all risk extended coverage, and vandalism and malicious mischief endorsements, insuring the Building (but excluding machinery, appliances, fixtures, furniture, furnishings or other personal property within a Unit), together with all service machinery contained therein . . . (c) water damage insurance to the extent, if any, determined by the Board; . . . (f) comprehensive general liability insurance . . .

\* \* \*

All policies of physical damage insurance shall contain, to the extent obtainable at reasonable rates, waivers of subrogation and waivers of any defense based on co-insurance or other insurance or of invalidity arising from any acts of the insured and of prorate reduction of liability . . .

\* \* \*

Each Unit Owner may carry supplemental or additional insurance for his own benefit, provided that all such policies shall contain waivers of subrogation, and further provided that the liability of the carriers issuing insurance obtained by the Board shall not be affected or diminished by reason of any such supplemental or additional insurance carried by such Unit Owner.

12.     The By-Laws were effective at the time of each subrogees' purchase of their respective Residential Units and as stated by Frederick Wodin, Vice President of the Board of Mangers, they have not been revised. Said By-Laws are annexed to **Wodin Aff.** as Exhibit "A".

13. In numerous provisions, the By-Laws also contain subrogation waivers. The By-Laws further provide that the Unit Owners and the Franklin Tower allocated the risk of loss or damage to machinery, appliances, fixtures, furniture, furnishings (including wall, ceiling and floor decorations and coverings), equipment or other personal property within a Unit to the Unit Owners. (See, in particular, By-Laws Section 2: Insurance and By-Laws Section 3. <u>Repair or Reconstruction After Fire or Other Casualty</u>).

14. The By-Laws provide as follows:

> Section 2: Insurance. The Board of Managers shall be required to obtain and maintain, to the extent obtainable at reasonable rates, and to the extent determined by the Board of Managers to be appropriate, the insurance set forth below, and the premiums for such insurance shall be a Common Expense except as otherwise provided in the Rules and Regulations: (1) fire insurance with all risks extended coverage, and vandalism and malicious mischief endorsements, insuring the Building (including all Units but excluding machinery, appliances, fixtures, furniture, furnishings or other personal property within a Unit), together with all service machinery contained therein . . . (3) comprehensive general liability insurance . . . (4) water damage insurance to the extent if any determined by the Board of Managers;
>
> * * *
>
> All polices of physical damage insurance shall contain, if obtainable at reasonable rates, waivers of subrogation and waivers of any defense based on co-insurance or of invalidity arising from any acts of the insured . . . .
>
> * * *
>
> . . . Each Unit Owner may carry supplemental or additional insurance for his own benefit, provided that all such policies shall contain waivers of subrogation, and further provided that the liability of the carriers issuing insurance obtained by the Board of Managers shall not be affected or diminished by reason of any such supplemental or additional insurance. . . .

and

Schedule A of the By-Laws, Paragraph 21.9 provides that

> . . . Each Unit Owner may carry other insurance for his own benefit, provided that all such policies shall contain waivers of subrogation, and further

provided that the liability of the carriers issuing insurance obtained by the Board of Managers shall not be affected or diminished by reason of any such additional insurance carried by such Unit Owner.

15. Section 3 of the By-Laws provides

    Section 3. <u>Repair or Reconstruction After Fire or Other Casualty</u>. In the event of damage to or destruction of the Building as a result of fire or other casualty (unless 75% or more of the Building is destroyed or substantially damaged and 75% or more in Common Interest of all Unit Owners do not, within sixty (60) days from the date of such damage or destruction, duly resolve to proceed with repair or restoration), the Board of Managers shall arrange for the prompt repair and restoration of the Building including the Units but excluding any machinery, appliances, furniture, furnishings, (including wall, ceiling and floor decorations and coverings), fixtures or equipment in the Units . . .

16. Finally, the contents of the Condominium Offering Plan are incorporated by reference in Paragraph 1, and made a part with the same force and effect as if set forth at length, within the Purchase Agreement entered into by each Unit Owner. (See Condominium Offering Plan page 127, annexed to **Wodin Aff.** as Exhibit "B"). Moreover, as provided in the Unit Deeds for the Carey units (**Wodin Aff.** - Exhibit "C") and for the Beecham unit (**Wodin Aff.** - Exhibit "D"), "Grantee by accepting delivery of this deed covenants and agrees to be bound by and to comply with the provisions of the Declaration and the By-Laws of the Condomium . . ."

17. Carey and Beecham each obtained insurance policies, for their own benefit, that were issued by American. These policies explicitly permitted Carey and Beecham to waive American's rights against another party in writing, so long as the waiver of subrogation was executed prior to a loss. (A copy of the American policy for Ms. Carey, bearing Plaintiff's Bates-Stamp P0606 to P0654, is attached hereto as Exhibit "E" and a copy of the American Policy for Mr. Beecham bearing Plaintiff's Bates Stamp P0775 to P0813 is

7

attached hereto as Exhibit "F".)   The subrogation related language may be found in the Carey policy at P0648 and in the Beecham policy at P0790).

18.   The waiver of subrogation clauses in the Condominium Offering Plan were agreed upon by Ms. Carey and by Mr. Beecham prior to the losses. (See Exhibit B).

WHEREFORE, Franklin Tower respectfully requests this Court find as a matter of law that American's claims are barred.

Dated:   New York, New York
         June 6, 2008

                                            Respectfully submitted,

                                            WHITE FLEISCHNER & FINO, LLP

                                            By: _____
                                            Jared T. Greisman (JG-6983)
                                            Attorneys for Defendant
                                            The Franklin Tower Condominium
                                            61 Broadway - 18th Floor
                                            New York, New York 10006
                                            (212) 487-9700
                                            Our File No.: 179-13150-PAF/JTG

TO:   (See Attached Certification of Service)\