**EXHIBIT A - 1**

REEL 3017 PG 1995

CONDOMINIUM NO. 108

### DECLARATION
### ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP
### OF THE PREMISES
### KNOWN AS AND BY THE STREET NUMBER
### 90 FRANKLIN STREET
### NEW YORK, NEW YORK

Pursuant to Article 9-B
of the Real Property Law of the State of New York

Name            **THE FRANKLIN TOWER**

Declarant       **CORN ASSOCIATES LLC**

Date of Declaration December 10, 1999

The land affected by the within Instrument lies in Block 175 and Lot 10 on the Tax Map of the Borough of Manhattan, City of New York.

**HERRICK, FEINSTEIN**
**Attorneys for Declarant**
**2 Park Avenue**
**New York, New York 10016**
**Attention: Leonard Grunstein, Esq.**

HFNY2: #436338 v2/04267-0000 / 12/08/1999

REEL 3017 PG 1996

# TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| 1. | Submission of the Property | 3 |
| 2. | The Land | 3 |
| 3. | The Building | 3 |
| 4. | The Units | 3 |
| 5. | Common Elements | 4 |
| 6. | Determination of Common Interest in the Common Elements | 7 |
| 7. | Use of the Building and Units | 7 |
| 8. | Person to Receive Service | 7 |
| 9. | Right to Combine, Subdivide or Realign Units | 8 |
| 10. | Encroachments | 9 |
| 11. | Certain Easements and Right of Entry | 10 |
| 12. | Power of Attorney to Declarant and to Board of Managers | 14 |
| 13. | Acquisition of Units by Board of Managers | 15 |
| 14. | By-Laws and Persons Subject to Declaration and By-Laws | 15 |
| 15. | Covenant of Further Assurances | 16 |
| 16. | Amendment of Declaration | 16 |
| 17. | Termination of Condominium | 17 |
| 18. | Invalidity | 18 |
| 19. | Waiver | 18 |
| 20. | Captions | 18 |
| 21. | Certain References | 18 |

NYFNY2: #436338 v2/04267-0000 / 12/01/1999

25 ×

REEL 3 0 1 7 PG 1 9 9 1

# DECLARATION OF THE FRANKLIN TOWER
### (Pursuant to Article 9-B of the
### Real Property Law of the State of New York)

CORN ASSOCIATES LLC, a New York limited liability company, having an office at 316/318 Fulton Avenue, Hempstead, New York 11550 (herein referred to as the "Declarant"), does hereby declare as follows:

1.        Submission of the Property.

The Declarant is the fee owner of the "Property" as such term is defined below and hereby submits the Land (hereinafter defined) and Building (hereinafter defined) and all other property, real, personal or mixed, intended for use in connection therewith (collectively the "Property") to the provisions of Article 9-B of the Real Property Law of the State of New York (the "Condominium Act"), and pursuant thereto does hereby establish a condominium to be known as "THE FRANKLIN TOWER" (sometimes herein referred to as the "Condominium").

2.        The Land.

The Property consists, in part, of all that certain tract, plot, piece and parcel of land situate, lying and being in the County, City and State of New York, more particularly described in Schedule A annexed hereto and made a part hereof, together with all easements, rights, privileges and hereditaments appurtenant thereto (collectively sometimes herein referred to as the "Land"). The Land is owned by the Declarant in fee simple.

3.        The Building.

The Property consists in part of a building, the exterior of which is constructed primarily of brick masonry, known as 90 Franklin Street (a/k/a 217 Church Street, New York, New York 10013). The Building contains seventeen stories at or above grade and a mezzanine, a cellar, a sub-cellar, and a three story mechanical penthouse bulkhead. The Building together with all other improvements now or hereafter erected thereon or on the Land are sometimes herein referred to as the "Building."

4.        The Units.

Schedule B annexed hereto and made a part hereof sets forth the following data with respect to each unit of the Condominium necessary for the proper identification thereof: unit designation, tax lot number, approximate area, Common Elements (hereinafter defined) to which the unit has immediate access and percentage interest of each unit in the Common Elements (sometimes herein referred to as the "Common Interest"). The location of each unit is shown on the floor plans of the Building certified by guenther petrarca, llp (a/k/a Architecture + Furniture) and intended to be filed in the office of the

- 3 -

HFNY2: #436338 v2/04267-0000 / 12/01/1999

25×

REEL 3017 PG 1993

Register of the City of New York in New York County contemporaneously with the recording of the Declaration (herein referred to as the "Floor Plans").

As shown on the Floor Plans, the Condominium consists in part of three (3) condominium units designated on the Floor Plans as Commercial Units (hereinafter sometimes referred to individually as a "Commercial Unit" and collectively, as the "Commercial Units"), comprising portions of the first floor, the mezzanine, the cellar and sub-cellar floors of the Building and such additional space in the Building which is part thereof as set forth below in this Section 4 and (ii) twenty-four residential condominium units designated on the Floor Plans as Residential Units (hereinafter sometimes collectively referred to as "Residential Units" and individually referred to as a "Residential Unit") comprising portions of the second through seventeenth floors of the Building and such additional space in the Building which is part thereof as set forth below in this Section 4.

The Commercial Units and Residential Units are sometimes collectively referred to as "Units" and individually referred to as "Unit". The owners of the Commercial Units are hereinafter sometimes referred to collectively as the "Commercial Unit Owners" and individually as a "Commercial Unit Owner." The owners of the Residential Units are hereinafter sometimes collectively referred to as "Residential Unit Owners" and individually referred to as a "Residential Unit Owner." The Commercial Unit Owners and Residential Unit Owners are sometimes collectively referred to as the "Unit Owners" and individually referred to as "Unit Owner."

Each Unit consists of the area measured (a) vertically from the top of the concrete ceiling to the underside of the concrete floor and (b) horizontally to the center line of demising walls between Units; to the center line of non-structural common walls; to the inside face of common structural walls; to the inside face of common structural walls or elements; and to the outside face of exterior walls. The trash room serving each Residential Unit comprises part of such Unit. Stairways and mechanical space that are interior to a Unit comprise part of such Unit. A roof terrace, a portion of which will be enclosed, a penthouse roof and the roof of the first level of the mechanical penthouse comprise part of Unit 16/17. The elevator lobbies of Units 11, 12, 13, 14, 15, and 16/17 comprise part of each such Unit. Each Unit shall also be deemed to include (i) that portion of any wall or partition separating such Unit from Common Elements that lies between the Unit side of such wall or partition and the frame or masonry, as the case may be, of such wall or partition, (ii) the doors and windows which open from the Unit.

Each of the Units is subject to such encroachments as are described in Section 10 of this Declaration.

5.        Common Elements.

(a) The Common Elements of the Condominium ("Common Elements") shall consist of all parts of the Property other than the Units and are comprised of (i) the general common elements which are described in Section (d) of this Article 5, the limited common

- 4 -

HFN Y2: #436338 v2/04267-0000 / 12/01/1999

25 × 10

REEL 3 0 1 7 PG 1 9 9 9

elements (the "Limited Common Elements") which are described in Section (b) of this Article 5 and the Residential Common Elements (the "Residential Common Elements"), which are described in Section (c) of this Article 5. In addition, the Commercial Unit Owner shall have the right, as more fully described in Section 9 hereof to convert space or constituents of its Units into a newly designated Limited Common Element.

(b) The Limited Common Elements of the Condominium consist of those Common Elements which serve or benefit exclusively a particular Unit and which are identified as a Limited Common Element on the Floor Plans, or which are created pursuant to the terms of this Declaration (including, without limitation, the provisions of Section 9 below). In addition, if any two Units which have access to the same shared hallway shall at any time be owned of record by the same owner (other than by the Declarant or its designee), such hallway shall thereafter be treated as a Limited Common Element until such time as such Units shall have different owners; provided that once such Units shall again have different owners, such hallway shall revert to the status of a Residential Common Element (or a General Common Element) if applicable. A Common Element which is not a Limited Common Element or a Residential Common Element is a "General Common Element." The eighteen (18) inch strip running along the full perimeter of the roof above the mechanical penthouse bulkhead is a Limited Common Element appurtenant to Commercial Unit C.

(c) The Residential Common Elements consist of the residential vestibule, entrance, service hall (nearest the Church Street entrance), residential lobby, vestibule, entrance hall, the concierge area, (including the toilet and storage areas adjacent thereto) and those hallways, corridors, rooms, and areas such as the elevator lobbies on floors 2-10, that serve two or more Residential Unit Owners (but not any Commercial Units and not the Limited Common Elements appurtenant to Commercial Unit C) and any central and appurtenant installations and equipment for services, including all pipes, ducts, wires, cables and conduits, maintenance, meter and common spaces used in connection with or serving two or more Residential Units or other Residential Common Elements or a Limited Common Element appurtenant to a Residential Unit.

(d) The General Common Elements consist of the parts of the Property designated on the Floor Plans as General Common Elements and/or as Common Elements (exclusive of Common Elements, if any, designated on the Floor Plans as Limited Common Elements or which are re-designated as Limited Common Elements pursuant to the terms of this Declaration including Sections 5 and 9 hereof) and exclusive of Residential Common Elements and include (even if within the dimensions of a Unit) the following:

(1)    The Land;

(2)    Any foundations, columns, girders, beams, supports, and wood joists;

- 5 -

25×

REEL 3 0 1 7 PG 2 0 0 0

(3)   All walls and partitions separating Units from the General Common Elements;

(4)   To the extent not located within or specifically made a part of a Unit or the Residential Common Elements or a Limited Common Element, if any, the roof, stairs, stairways, hallways and corridors within the General Common Elements and entrances to and exits from the General Common Elements;

(5)   The central and appurtenant installations and equipment for services such as power, light, telephone, gas, hot and cold water, sewer and fire safety, including all pipes, ducts, wires, cables and conduits used in connection therewith and all maintenance, storage area in sub-cellar and storage area in corridor leading from 17th floor to the roof, meter and common equipment spaces (including the mechanical room, machine room, elevator pits, stairs, building office, meter room, water meter, trash holding room, telephone room, janitor closet, toilet on cellar level, transformer room, water meter room, water pump room and telecommunications closet) in connection therewith (except for appliances and equipment located in and serving only a Unit which shall constitute a part of such Unit);

(6)   Maintenance and common equipment spaces and common tanks, pumps, motors, fans and controls or other such equipment;

(7)   All Units which may hereafter be acquired and held by the Board of Managers on behalf of all Unit Owners, but only while so held;

(8)   To the extent not specifically made part of a Unit, the Residential Common Elements or a Limited Common Element by the terms of this Declaration, all other parts of the Property including all apparatus and installations existing on the Land for common use or which are necessary or convenient to the existence, maintenance or safety of the Property;

HFNY2: #436338 v2/04287-0000 / 12/01/1999

25×

REEL 3 0 1 7 PG 2.0 0 1

6.        <u>Determination of Common Interest in the Common Elements.</u>

The Common Interest of each Unit in the Common Elements is set forth in Schedule B and has been determined by the Declarant in accordance with Real Property Law Section 339-I.1(iv), based upon floor space, subject to the location of such space and additional factors of relative value of such space to other space in the Condominium, the uniqueness of the Unit, the availability of Common Elements for exclusive or shared use and the overall dimensions of the Unit. The Common Interest of each Unit that includes below grade space has been computed based upon 100% of the above grade space and 7% of the below grade space. The Common Interest of Unit 16/17 is computed based on the full floor area of all interior space comprising such Unit (including the enclosed portion of the roof terrace) and 50% of the floor area of all exterior space (<u>i.e.</u>, the roof terrace and penthouse roof and roof of the first level of the mechanical penthouse) comprising such Unit. The floor area of the trash room and any mechanical space situated within a Unit as well as the elevator lobbies serving and comprising part of Units 11, 12, 13, 14, 15 and 16/17 have been included in the floor area of such Unit for the purpose of computing such Unit's Common Interest.

7.        <u>Use of the Building and Units.</u>

The Building is presently used or will be used as a class A multiple dwelling with commercial space located on the ground floor, mezzanine, the cellar and a portion of the sub-cellar of the Building.

The Residential Units may be used solely for dwelling purposes and such "home occupation" use under the Zoning Resolution of the City of New York as may be permitted by law, except as set forth below.

The Commercial Units may, except as set forth in the next sentence, be used for any lawful purpose permitted under the Zoning Resolution of the City of New York and other applicable law. The Commercial Units may not be used for any obscene or noxious purpose.

The Declarant or its designees shall have the right to maintain a general or sales office in any Unit owned by any of them and to use any Unit owned by any of them as a model and for other promotional purposes in connection with the sale or lease of Units in the Condominium.

8.        <u>Person to Receive Service.</u>

The Secretary of State of the State of New York is designated as agent of the Board of Managers of the Condominium (the "<u>Board of Managers</u>" or the "<u>Board</u>") upon whom process against it may be served at the Office of the New York State Department of State in the manner provided by applicable law. The Board of Managers shall file with

- 7 -

HFNY2. #436338 v2/04267-0000 / 12/01/1999

25 ×

REEL 3 0 1 7 PG 2 0 0 2

the Secretary of State the name and post office address of the Condominium for purposes of receiving copies of any process served against the Board of Managers.

9.        Right to Combine, Subdivide or Realign Units.

Notwithstanding any other provision of the Declaration or By-Laws (hereinafter defined), Declarant, its designees and each Commercial Unit Owner (to the extent applicable to such Commercial Unit Owner's Unit, as the case may be, shall have the right, without the consent of any of the other Unit Owners, or the Board of Managers or the mortgagee of any Unit, from time to time, to (a) change its Unit or any part thereof by changing the layout, number of rooms, or size or number of such Unit or by subdividing the same into any desired number of condominium units (or by combining any units resulting from any such subdivision); (b) create and designate a Limited Common Element for the exclusive use of the newly created Units; (c) convert space or constituents of its Unit into a newly designated Limited Common Element and/or convert and designate a Limited Common Element as a part of the newly created condominium units; (d) combine Units with the consent only of the owners of such Units to be combined; (e) reapportion among any newly created condominium unit(s) resulting from any subdivision (or combination) as provided above the Common Interest appurtenant to the Units; (f) in the case of a Commercial Unit, construct, install, maintain, repair, replace or alter a storefront, facade or other exterior portion of such Unit,    (g) dedicate any or all utility, sewer, telecommunications or cable television and drainage easements in any portion of the Property to any governmental body, public benefit corporation, telecommunications or cable television company or utility company if such Commercial Unit Owner, Declarant or designee of Declarant shall deem it necessary or desirable for the proper operation and maintenance of its Unit or (as to Declarant) the Property and (h) amend the certificate of occupancy of the Building or obtain a new certificate of occupancy therefor in connection with the exercise of any of its rights under this Section 9.  However, by reason of the foregoing, the Common Interest of the other Units shall not be enlarged unless the affected Unit Owner consents thereto, except that Limited Common Elements may be created for the exclusive use of any or all of the aforesaid subdivided (or combined) condominium units as provided above, in which event the Common Expenses exclusively attributable to such Limited Common Elements shall be borne by the owners of such subdivided (or combined) Condominium Units.   The Commercial Unit Owners, Declarant and/or its designees, as the case may be, shall each have the right to reflect any of the matters described above in a duly recorded amendment to the Declaration (and the obligation to do so in case clause (a) above applies) or the By-Laws or the Floor Plans, and may further amend the Declaration and By-Laws to provide for the conduct of the affairs of a Unit as subdivided in any manner which does not increase the obligations or decrease the rights of any of the other Unit Owners under the Declaration or the By-Laws, which amendment and the recording thereof shall not require the consent of the Board of Managers and/or other Unit Owners. In making any additions, alterations, or improvements pursuant to this Section 9, such Commercial Unit Owner, Declarant or its designees, as the case may be, shall (i) make all reasonable efforts to minimize any interference with the other Unit Owners' use and enjoyment and business conduct in their Units for permitted purposes;

- 8 -

HFNY2: #436338 v2/04267-0000 / 12/01/1999

25×

REEL 3 0 1 7 PG 2 0 0 3

(ii) comply with all laws, ordinances and governmental authorities having jurisdiction and (iii) hold the Board of Managers and the other Unit Owners harmless from any liability arising therefrom. Notwithstanding anything to the contrary contained herein, neither the Declarant nor the Commercial Unit Owner shall take any action described in this Article 9 for so long as the Construction Loan (as such term is defined in the By-Laws) is a lien on any Unit that would be affected by such action, without the prior written consent of the Construction Lender (as such term is defined in the By-Laws).

The Owner of Unit 16/17 shall, at any time have the right to divide such Unit into two separate Residential Units, provided such Owner complies with (a) all applicable governmental requirements, and (b) all reasonable requirements of the Board of Managers.

The consent of the Board of Managers and/or other Unit Owners shall not be required for the exercise by any Commercial Unit Owner, Declarant or its designees, as the case may be, of the rights and powers set forth in this Section 9 or in Section 11 below. Neither the provisions of this Section 9 (or of Section 11 below) nor any of the other rights and powers of a Commercial Unit Owner, Declarant or its designees, as the case may be, under this Declaration or the By-Laws, including without limitation the authority of any Commercial Unit Owner, Declarant or its designees, as the case may be, to record an amendment of the Declaration or By-Laws or the Floor Plans pursuant to this Section 9, may be modified or deleted by amendment of the Declaration or By-Laws or otherwise. The signatures of the other Unit Owners and/or Board of Managers shall not be required in connection with any amendment to the Declaration or By-Laws or Floor Plans permitted above or to any application or other document necessary or convenient to the exercise by a Commercial Unit Owner, the Declarant or its designees, as the case may be, of any of their rights or powers under this Section 9 or under Section 11 below, including but not limited to any application or document required by the Department of Buildings, the Real Property Assessment Bureau of the City of New York or any other governmental agency in connection with an amendment to the certificate of occupancy of the Building or the establishment of separate tax lots for any newly created condominium units and reapportionment of assessed valuation by reason thereof. Nevertheless, the Unit Owners and the Board of Managers shall execute any such amendments, applications or other documents and they hereby grant to each Commercial Unit Owner, the Declarant and/or its designees, an irrevocable power of attorney coupled with an interest and granted for a valuable consideration to execute, deliver and/or record any such amendments, applications or other documents on behalf of the Board of Managers and Unit Owners, and any such execution, delivery and/or recording shall not require the consent of the Board of Managers or the Unit Owners.

10.        Encroachments.

If any portion of the Common Elements presently encroaches upon any Unit or if any Unit presently encroaches upon any other Unit or upon any portion of the Common Elements or, if as a result of the manner in which the Building was constructed or as a result of settling or shifting of or as a result of the repair, restoration, and/or

- 9 -

HFNY2: #436338 v2/04267-0000 / 12/01/1999

25× 10

REEL 3 0 1 7 PG 2 C 6 4

alteration of the Building, the Common Elements or a Unit owned by Declarant or its designees, such encroachment shall occur, then a valid easement for the encroachment and for the maintenance of the same, so long as the Building stands, shall exist. If the Building or any Unit therein or any Common Element shall be partially or totally destroyed as a result of fire or other casualty or as a result of condemnation or eminent domain proceedings and then rebuilt, then in such event, encroachments of parts of the Common Elements upon any Unit or of any Unit upon any other Unit or upon any portion of the Common Elements due to such rebuilding shall be permitted and valid easements for such encroachments and the maintenance thereof shall exist so long as the Building shall stand.

11.    Certain Easements and Right of Entry.

Each Unit Owner shall have an easement in common with the other Unit Owners for the use, maintenance, repair and replacement of all pipes, wires, ducts, cables, conduits, public utility lines and other Common Elements located in any of the other Units or elsewhere in the Property and serving his Unit.  Each Unit shall be subject to an easement in favor of the other Unit Owners for the use, maintenance, repair and replacement of all pipes, ducts, cables, wires, conduits, public utility lines and other Common Elements serving such other Units and located in such Unit. The Board of Managers shall have a right of access to each Unit to inspect the same, to prevent damage thereto, to remove violations therefrom and to maintain, repair or replace the Common Elements contained therein or elsewhere in the Property subject  to any restrictions on such right as may from time to time be provided in the By-Laws.  Each Unit and the Common Elements shall have an easement of support, subjacency and necessity and shall be subject to such easement in favor of all the Units and the Common Elements.

The Declarant and any of its affiliates or designees and their successors, assigns, invitees, licensees, contractors, employees and tenants, shall have an easement in, on, over and across all areas of the Property for ingress to and egress from all land areas of the Property and the use thereof (in common with Unit Owners) for construction or renovation of the Building, or any part thereof, the inspection, maintenance and performance of alterations, replacements, and repairs in or about Units owned by the Declarant or its designees or the Common Elements and in fulfilling the Declarant's obligations under the condominium offering plan promulgated by the Declarant for the Property (the "Plan") and for any other lawful purpose provided (i) Declarant or such other party repairs any resulting damage to the Unit or Common Elements, as the case may be, and restores the damaged portion to substantially the condition it was in prior to such entry and (ii) Declarant provides reasonable prior notice to the owner of the Unit to which access is required or the Board in the case of the Common Elements.

Declarant and/or its designees shall have an easement, without the necessity of obtaining the consent of the Board of Managers and/or Unit Owners  over any part of the Property, including each Unit and the Common Elements, in order to inspect, maintain, repair, replace or alter its Units or the Common Elements as provided in this Declaration and the By-Laws.

- 10 -

HFNY2: #436338 v2/04267-0000 / 12/01/1999

25×

REEL 3 0 1 7 PG 2 0 0 5

Declarant and/or its designees and each Commercial Unit Owner (to the extent applicable to such Unit Owner's Commercial Unit), shall have an easement without the necessity of obtaining the consent of the Board of Managers and/or Unit Owners (1) over the Property, including each Unit and the Common Elements, for access to and to construct, install, erect, inspect, maintain, repair, operate, use and replace from time to time one or more Signs (as hereinafter defined) on the Property (including, without limitation on any Common Element, storefront, exterior facade, lobby or any other public portion of the Property) for the purposes of advertising the sale of Units and the leasing of the Units or of space in any of the Units or advertising any of the services and/or facilities of such Commercial Unit Owner or the services and/or facilities of any tenant occupying such Commercial Unit; (2) over the Property, including each Unit and the Common Elements in connection with the sales and/or leasing of Units; (3) over the Property, including each Unit and the Common Elements for access to and to construct, install, erect, inspect, maintain, repair, operate, use and replace from time to time a storefront, facade or other exterior portion adjacent to the Commercial Units; (4) over any part of the Property, including each Unit and the Common Elements (including, without limitation, the stairways, walkways, elevators, vestibules and other public spaces within the Property) for purposes of access to and for all purposes in connection with the installation (whether on Common Elements or within its Unit), inspection, maintenance, repair, operation, improvement or use of any of the following serving a Commercial Unit: the Service Equipment (as hereinafter defined), flues and/or ducts, security system (including, without limitation, any and all cables and electrical lines as may be desirable in connection with the installation, maintenance, repair and/or replacement of telecommunications or similar equipment on the portion of the roof of the mechanical penthouse bulkhead comprising a Limited Common Element appurtenant to Commercial Unit C to the exterior of the Building and or to all portions of the roof, as deemed necessary or desirable by the owner of Commercial Unit C) alarms, gates, electric eyes or video cameras, smokestacks, heating, air-conditioning systems and devices and exhaust and ventilation fans, systems and devices, in each case, located anywhere on the Property. Notwithstanding the above, the Commercial Unit Owner may only install such Signs on the exterior of the Building as shall be approved, in writing, by the Declarant or its designee, and in no case shall a neon sign be installed on the exterior of the Building by any Commercial Unit Owner without the prior written approval of the Declarant or its designee.

The Common Elements and the Limited Common Elements appurtenant to Commercial Unit C shall be subject to non-exclusive easements in favor of New York Telephone Company d/b/a Bell Atlantic - New York and Bell Atlantic Video Services Company or other telecommunications firm(s) selected by Sponsor over the (a) Common Elements and (b) such location within the Limited Common Elements appurtenant to Commercial Unit C as may be (a) necessary to provide such telecommunications services and satellite dish services as may be described in such written agreements as may be entered into by Sponsor and/or the Condominium Board, and (b) approved in writing by Sponsor (prior to the Closing Date) or the Condominium Board and the owner of Commercial Unit C (after the Closing Date), which consent(s) shall not be unreasonably withheld or delayed, for the installation, maintenance, repair, replacement and removal of

- 11 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 0 5

a satellite dish and antennas and any and all related telecommunications equipment and facilities including, without limitation, cables, wires, conduits, horizontal and vertical risers, shafts, terminals, multiplexes and other equipment and apparatus. In addition, such telecommunications firms shall have an easement for access to each Unit for the maintenance, repair and replacement of any of the foregoing equipment, if situated within such Unit.

Declarant and the Commercial Unit Owners will have an easement to construct, operate and maintain an elevator from the cellar to the sub-cellar in the area adjacent to the trash holding room; any such elevator, if so installed, shall become a General Common Element. The owner of Commercial Unit C shall have the exclusive right, without obtaining the consent of the Board and shall have all necessary or convenient access to install, erect, construct, inspect, operate, use, maintain, repair and replace or alter antennas, cellular telephone, telecommunications and similar equipment on any and all parts of the portion of the roof of mechanical penthouse bulkhead comprising a Limited Common Element appurtenant to Commercial Unit C and, shall have an easement through the Common Elements to install, erect, construct, inspect, operate, use, maintain, repair and replace or alter such wires, conduits, cables and similar equipment servicing or otherwise required or convenient in connection with the installation, existence, servicing, maintenance, repair and/or replacement of any such antennas, cellular communications, telecommunications or similar equipment (collectively, "Commercial Unit C's Telecommunications Rights"). The owner of Commercial Unit C shall be entitled to collect and retain all revenues of any type whatsoever derived from Commercial Unit C's telecommunication rights and/or such equipment. The owner of Commercial Unit C shall have the right to grant to any party (whether or not a Unit Owner) the foregoing telecommunications rights, whether on an exclusive or non-exclusive basis, as the owner of Commercial Unit C may elect and such grantee(s) (and their successors and assigns) may, in turn, assign such Telecommunications Rights. The Telecommunications Rights described above are in addition to "Declarant's Telecommunication Rights" (as hereinafter defined) and any telecommunications systems serving the Unit Owners. All Telecommunications Rights granted to the owner of Commercial Unit C shall have priority over any similar rights and installations that may be made by either the Declarant or the Condominium Board, and Declarant's Telecommunication Rights (as set forth below) shall have priority over any similar rights and installations that may be made by the Condominium Board. If the Condominium Board receives any offer or solicitation of any type whatsoever from any entity interested in, or that would otherwise entail the use of Telecommunications Rights, the Condominium Board shall notify the Declarant, which shall have the right for thirty days following notice from the Condominium Board, to notify the Condominium Board that it (i.e., the Declarant) intends to enter into an agreement with the offeror. The Declarant shall thereafter have a period of one hundred twenty (120) days to consummate such agreement, failing which the Condominium Board may consummate an agreement with the offeror. In no event shall the Condominium Board approve the installation of any telecommunications equipment of the type described herein, on any Limited Common Element or in any location that would interfere any installation and operation of any such equipment by the owner of Commercial Unit C or the Declarant or

- 12 -

25×□

REEL 3 0 1 7 PG 2 0 0 7

their respective successors assignees, lessees or licensees. The Condominium Board of Managers and any individuals assigned by any utility company to read or maintain water meters shall have an easement from the elevators through Commercial Unit A to the water meter room. Each of the foregoing easements shall be exercised in such manner as not to unreasonably disrupt the use by other Unit Owners of their respective Units.

If the Commercial Unit has an entrance or exit leading to the lobby or any interior portion of the Building, and such entrance or exit is locked by the Board of Managers, then the Commercial Unit Owner may install an intercom and buzzer-lock system (or alternate system with a similar purpose) to allow persons to pass through such entrance or exit (however, patrons of a Commercial Unit shall not use the elevators in the lobby except (i) for handicapped access to the Commercial Unit, (ii) if required by law, or (ii) in the event of an emergency), and to use the sidewalks adjacent to its Unit, including for the placement of Signs, advertising retail space or other commercial space, operation of a sidewalk cafe and the installation and maintenance of deposit boxes for any banks.  The signatures of other Unit Owners and/or the Board of Managers shall not be required in connection with any application or other document necessary or convenient to the exercise by a Commercial Unit Owner of its right to use such sidewalks as provided above. Nevertheless, the Unit Owners and the Board of Managers shall execute any such application or other document and they hereby grant to each Commercial Unit Owner an irrevocable power of attorney coupled with an interest to execute and deliver any such application or other document and the execution and delivery thereof shall not require the consent of the Board of Managers and/or the other Unit Owners.  If a Commercial Unit Owner makes use of any sidewalk or submits any application or document pursuant to the preceding two sentences, it shall indemnify and hold the Declarant and all other Unit Owners harmless from and against any claim, liability, loss, cost, damage and expense (including reasonable attorneys' fees and expenses) arising out of or in connection with such use and/or such application or document, as the case may be.

The Declarant and its designees shall have an easement, without the necessity of obtaining the consent of the Board of Managers or the Unit Owners, over the Property (including the Units and the Common Elements to (i) install, erect, construct, inspect, operate, use, maintain, repair, replace or alter roof antennas, cellular communications, telecommunications and similar equipment on the Building roof (whether or not serving a Unit owned by Sponsor and/or its designees) in such locations as Declarant shall determine, other than in the space specifically set aside on the Building roof as a Limited Common Element or as roof recreation area to be shared by all Unit Owners and (ii) and to collect any and all income derived from such facilities (such easement and all appurtenant rights as described above, collectively, the "Declarant's Telecommunication Rights").  Declarant shall have the right to grant to any party (whether or not a Unit Owner) the Declarant's Telecommunication Rights, whether on an exclusive or non-exclusive basis, as Declarant may elect and such grantee(s) (and their successors and assigns) may, in turn, assign their Declarant's Telecommunication Rights on an exclusive or non-exclusive basis, as they may determine.

- 13 -

HFNY2. #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3 0 1 7 PG 2 0 6 6

The Declarant and its designees, as the case may be, (without the necessity of obtaining the consent of the Board of Managers or the Unit Owners) and the Board of Managers (without the necessity of obtaining the consent of the Unit Owners) shall each have the right to establish, grant and create easements for any additional electric, transformer, amplifier, gas, cable television, telephone, water, sewer or other utility lines, flues, ducts and appurtenances (including such equipment rooms as may be required in connection with any of the foregoing) in, under and through the Property including, without limitation, within any of the Units, and to relocate any existing utility, sewer and drainage easements in any portion of the Property including, without limitation, within any of the Units, provided that such additional utilities or the relocation of existing utilities will not prevent or unreasonably interfere with the use of a Unit (or the Limited Common Elements appurtenant thereto) after construction thereof without the consent of the owner of such Unit.

As used in this Section 11 and elsewhere in this Declaration, the following terms shall have the respective meanings set forth below:

"Building roof antennas" shall mean any antennas or other communications devices (including, without limitation, a telephone repeater or other communication antennae or device for cellular telephones) and any ancillary electrical equipment now or hereafter installed on the Building roof by an owner of Commercial Unit C's Telecommunication Rights or Declarant's Telecommunication Rights.

"Service Equipment" shall mean all of the following now or hereafter installed in the Building, serving one or more Units or the Limited Common Elements, if any, appurtenant thereto: (i) pipes, wires, ducts, risers, cables, conduits and (ii) mechanical, electrical and other equipment, including supplemental air-conditioning systems, antennas and other communications devices.

"Signs" means any sign, advertisement, notice or other lettering.

12.       Power of Attorney to Declarant and to Board of Managers.

Each Unit Owner shall grant to the persons who shall from time to time constitute the Board of Managers an irrevocable power of attorney coupled with an interest and granted for a valuable consideration to (a) acquire title to or an interest in any Unit which a Unit Owner decides to surrender, sell or lease, in the name of the Board of Managers or its designees, corporate or otherwise, on behalf of all Unit Owners, (b) convey, sell, lease, mortgage, or otherwise deal with (but not to cast the votes appurtenant to) any Units acquired by the Board of Managers, (c) execute, acknowledge and deliver (i) any application, declaration or other document which the Board of Managers or a Unit Owner deems necessary or appropriate to comply with any law, ordinance, regulation, zoning resolution or requirement of any governmental authority (including without limitation, the New York City Department of Buildings, the City Planning Commission and the Board of Standards and Appeals), applicable to the maintenance, demolition, construction, altera-

- 14 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 0 9

tion, repair, improvement or restoration of a Unit or the Common Elements or combination or subdivision of a Unit permitted hereunder or (ii) any application, consent, covenant, restriction, easement, declaration, or other document affecting a Unit or the Common Elements as may be required or permitted under this Declaration.

In addition, each Unit Owner shall grant to Declarant an irrevocable power of attorney coupled with an interest and granted for valuable consideration, to execute, acknowledge and deliver any application, declaration, document or other instrument affecting the Condominium that Declarant deems necessary or appropriate to comply with any Law, zoning resolution, or requirement of the Department of Buildings, or any other governmental authority applicable to the rehabilitation, maintenance, demolition, alteration, restoration, or repair of the Property or any part thereof.

13.     <u>Acquisition of Units by Board of Managers</u>.

If a Unit Owner shall surrender his Unit together with (i) the undivided interest in the Common Elements appurtenant thereto, (ii) the interest of such Unit Owner in any other Units acquired by the Board of Managers or its designees on behalf of the other Unit Owners or the proceeds of the sale or lease thereof if any, and (iii) the interest of such Unit Owner in any other asset of the Condominium (hereinafter collectively referred to as the "<u>Appurtenant Interest</u>") pursuant to the provisions of the Real Property Law of the State of New York, or in the event the Board of Managers shall purchase a Unit together with its Appurtenant Interest pursuant to Article VI of the By-Laws or otherwise, or if the Board of Managers shall acquire, at a foreclosure or other sale, a Unit together with its Appurtenant Interest, then and in such event, title to any such Unit together with the Appurtenant Interest shall be held by the Board of Managers or its designees, corporate or otherwise, on behalf of all Unit Owners in proportion to their respective Common Interests.

14.     <u>By-Laws and Persons Subject to Declaration and By-Laws</u>.

Attached to this Declaration and made a part hereof are the By-Laws of the Condominium which set forth detailed provisions governing the Condominium. The By-Laws (including the Rules and Regulations thereunder) as they may be amended from time to time are referred to in this Declaration as "<u>By-Laws</u>." All capitalized terms in this Declaration which are not defined herein shall have the meanings given to those terms in the By-Laws.

All present and future Unit Owners, tenants, visitors and occupants of Units shall be subject to and shall comply with the provisions of this Declaration and the By-Laws, as the same may be amended from time to time. Acceptance of a deed or other conveyance or the entering into of a lease or other occupancy of any Unit shall constitute an agreement that the provisions of this Declaration and By-Laws, as the same may be amended from time to time, are accepted and ratified by such Unit Owner or such other party having an interest in the Unit or by such tenant or other occupant. All of the provisions of this Declaration and By-Laws shall be deemed and taken to be covenants

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 1 6

running with the land and shall bind any persons having at any time any interest or estate in any Unit as though such provisions were recited and stipulated at length in each and every deed, conveyance, lease or occupancy thereof. However, the provisions of this Declaration and the By-Laws, as the same may be amended from time to time, are not intended to create nor shall they be construed as creating any rights in or for the benefit of the general public.

15.    Covenant of Further Assurances.

Any party which is subject to the terms of the Declaration, whether such party is a Unit Owner, a lessee or sublessee of a Unit Owner, an occupant of a Unit, a member or officer of the Board of Managers, or otherwise, shall execute, acknowledge and deliver to such other party such instruments, in addition to those specifically provided for herein, and take such other action, as such other party may reasonably request to effectuate the provisions of this Declaration or the By-Laws or of any transaction contemplated by this Declaration or the By-Laws or to confirm or perfect any right to be created or transferred pursuant to this Declaration or the By-Laws or pursuant to any such transaction.

If any Unit Owner or any other party which is subject to the terms of this Declaration fails or refuses within five (5) days after request therefor to execute, acknowledge or deliver any instrument, or to take any action which such Unit Owner or other party is required to execute, acknowledge and deliver or to take pursuant to this Declaration or the By-Laws, then the Board of Managers is hereby authorized as attorney-in-fact for such Unit Owner and other party, coupled with an interest and granted for a valuable consideration, to execute, acknowledge and deliver such instrument and to take such action, in the name of such Unit Owner or other party.

If any Unit Owner, the Board of Managers or any other party which is subject to the terms of this Declaration fails or refuses within five (5) days after request therefore to execute, acknowledge or deliver any instrument or to take any action which such Unit Owner, the Board of Managers, or other party is required to execute, acknowledge and deliver or to take pursuant to this Declaration or By-Laws at the request of the  Declarant or its designees, as the case may be, then the Declarant or its designees, as the case may be, is hereby authorized as attorney-in-fact for such Unit Owner, the Board of Managers and other party, coupled with an interest and granted for a valuable consideration, to execute, acknowledge and deliver such instrument and to take such action in the name of such Unit Owners, the Board of Managers and/or other party.

16.    Amendment of Declaration.

Except as otherwise provided in the By-Laws and this Declaration with respect to a Commercial Unit Owner, Declarant or its designees, as the case may be, this Declaration may be amended by vote of not less than 80% in number and in Common Interest of all Unit Owners cast in person or by proxy at a meeting duly held in accordance with the provisions of the By-Laws, provided, however, (i) any such amendment shall not

- 16 -

14FNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3017 PG 2011

be effective against (a) the Construction Lender, for so long as it holds a lien on any Unit, without its prior written consent and (b) a holder of a mortgage of record affecting a Unit, unless a Majority of the Mortgage Representatives shall consent thereto in writing, which consent shall not be unreasonably withheld or delayed; and (ii) if the Declarant or its designees or any Commercial Unit Owner shall not have voted in favor of such amendment, then same shall not be effective unless reasonably necessary or convenient to the conduct of the affairs of the Condominium and/or the operation of the Property and such amendment shall not decrease the rights of such Commercial Unit Owner, the Declarant or its designees or increase the obligations of such Commercial Unit Owner, the Declarant or its designees. Notwithstanding anything to the contrary contained herein, no provision of this Declaration relating to the use of the Units or appurtenant Common Interests may be amended without the consent of every Unit Owner affected by such amendment except as expressly provided in Section 9 or Section 11 of this Declaration. Any such amendment shall be executed by the Board of Managers as attorneys-in-fact for the Unit Owners, coupled with an interest and granted for a valuable consideration, and the Board of Managers is hereby authorized by the Unit Owners so as to act as their attorney-in-fact.

Each amendment to this Declaration or the By-Laws must be signed and acknowledged in accordance with the legal requirements for recording a Unit Deed, and shall not be effective, binding or enforceable until recorded in the New York City Register's Office for New York County.  In addition, a copy of this Declaration and the By-Laws and any amendments thereto shall be filed with the New York State Department of State.

The provision of this Section 16 and Section 9 may not be amended without the unanimous consent of all the Unit Owners. The terms "amend," "amended" or "amendment" as used in this Declaration shall also be deemed to mean deleting a provision of this Declaration or adopting a new provision.

17.        Termination of Condominium.

The Condominium shall continue until (a) terminated by casualty loss, condemnation or eminent domain, as more particularly provided in the By-Laws or (b) such time as withdrawal of the Property from the provisions of the Condominium Act is authorized by a vote of at least 80% in number and in Common Interest of all Unit Owners and all of the holders of mortgages of record affecting the Units.  No such vote under clause (b) in the preceding sentence shall be effective without the written consent of the mortgagees of the Units, if any. In the event said withdrawal is authorized as aforesaid, the Property shall be subject to any action for partition by any Unit Owner or lienor as if owned in common, in which event the net proceeds of sale shall be divided among all Unit Owners in proportion to their respective Common Interests, provided, however, that no payment shall be made to a Unit Owner until there has first been paid from out of his share of such net proceeds, all liens on his Unit, in the order of priority of such liens.

- 17 -

HFNY2. #436338 v2/04267-0000 / 12/02/1999

25 ×

REEL 3 0 1 7 PG 2 0 1 2

18.    Invalidity.

The invalidity of any provisions of this Declaration or any portion thereof shall not be deemed to impair or affect in any manner the validity, enforceability or effect of the remainder of this Declaration and in such event all of the other provisions of this Declaration shall continue in full force and effect as if such invalid provision had never been included herein.

19.    Waiver.

No provision contained in this Declaration shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches which may occur.

20.    Captions.

The captions herein are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope or the intent of any provision hereof.

21.    Certain References.

The use of the masculine gender in this Declaration shall be deemed to refer to the feminine gender and the use of the singular shall be deemed to refer to the plural and vice versa whenever the context so requires.

The terms "herein", "hereof" or "hereunder," or similar terms used in this Declaration, refer to this entire Declaration and are not to the particular provision in which the terms are used unless the context otherwise requires.

IN WITNESS WHEREOF, the Declarant has caused this Declaration to be executed as of this 10th day of December, 1999.

CORN ASSOCIATES LLC
By: Franklin Church Associates, LLC
     Managing Member

By: _____
     Robert A. Levine, Manager

- 18 -

25 × I

REEL 3 0 1 7 PG 2013

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NASSAU      )


On the 10th day of December in the year 1999, before me, the undersigned, a Notary Public in and for said State, personally appeared Robert A. Levine, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf on which the individual acted, executed the instrument.



Sworn to before me this

10th day of December, 1999.



_____
Notary Public

William Baron
Notary Public, State of New York
Qualified in Nassau County
No: 02BA6016666
Commission Expires 11/28/2000

HFNY2: #436338 v2/04267-0000 / 12/09/1999

REEL 3017 PG 2014

## SCHEDULE A

### Description of Land

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of Franklin Street and the easterly side of Church Street; running thence easterly along the northerly side of Franklin Street, a distance of 75 feet; thence northerly and parallel with the easterly side of Church Street, a distance of 75 feet; thence westerly and parallel with the northerly side of Franklin Street, 75 feet to Church Street; thence southerly along the easterly side of Church Street, 75 feet to the northerly side of Franklin Street, the point of place of BEGINNING.

Premises being known as and by street No. 271 Church Street, New York, NY.

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3017 PG 2015

## SCHEDULE B

| Unit Designation | Approximate Number of Zoning Rooms/Bathrooms "As Built" | Tax Lot Number | Approximate Size of Unit in Square Feet Unit | Common Interest | Portion of the Common Elements to Which Each Unit Has Immediate Access | Location In Building |
|---|---|---|---|---|---|---|
| 2 North | 2/2 | 1304 | 1,885 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 2ND FLOOR |
| 2 South | 4/3 | 1305 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 2ND FLOOR |
| 3 North | 2/2 | 1306 | 1,885 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 3RD FLOOR |
| 3 South | 4/3 | 1307 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 3RD FLOOR |
| 4 North | 2/2 | 1308 | 1,885 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 4TH FLOOR |
| 4 South | 4/3 | 1309 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 4TH FLOOR |
| 5 North | 2/2 | 1310 | 1,885 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 5TH FLOOR |
| 5 South | 4/3 | 1311 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 5TH FLOOR |
| 6 North | 2/2 | 1312 | 1,885 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 6TH FLOOR |

- 21 -

NFNY2: 54XX331 42N4257-0001 / 12/14/1999

(TUE)12.14'99 14:58/ST. 14:57/NO. 4260647728 P 2

FROM

25×

REEL 3017 PG 2016

| Unit Designation | Approximate Number of Zoning Rooms/Bathrooms "As Built" | Tax Lot Number | Approximate Size of Unit In Square Feet Unit | Common Interest | Portion of the Common Elements to Which Each Unit Has Immediate Access | Location in Building |
|---|---|---|---|---|---|---|
| 6 South | 4/3 | 1313 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 6TH FLOOR |
| 7 North | 2/2 | 1314 | 1,895 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 7TH FLOOR |
| 7 South | 4/3 | 1315 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 7TH FLOOR |
| 8 North | 2/2 | 1316 | 1,895 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 8TH FLOOR |
| 8 South | 4/3 | 1317 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 8TH FLOOR |
| 9 North | 2/2 | 1318 | 1,895 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 9TH FLOOR |
| 9 South | 4/3 | 1319 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 9TH FLOOR |
| 10 North | 2/2 | 1320 | 1,895 | 2.3404 | hallway, elevator lobby, elevators, stairs | North, West 10TH FLOOR |
| 10 South | 4/3 | 1321 | 2,633 | 3.2518 | hallway, elevator lobby, elevators, stairs | South, West, East 10TH FLOOR |
| 11 | 7/4.5 | 1322 | 5,027 | 6.2004 | hallway, elevators, stairs | North, South, East, West 11TH FLOOR |

- 22 -

REEL 3017 PG 2017

| Unit Designation | Approximate Number of Zoning Rooms/Bathrooms "As Built" | Tax Lot Number | Approximate Size of Unit in Square Feet Unit | Common Interest | Portion of the Common Elements to Which Each Unit Has Immediate Access | Location in Building |
|---|---|---|---|---|---|---|
| 12 | 7/4.5 | 1323 | 5,027 | 6.2084 | hallway, elevators, stairs | North, South, East, West 12TH FLOOR |
| 13 | 7/4.5 | 1324 | 5,027 | 6.2084 | hallway, elevators, stairs | North, South, East, West 13TH FLOOR |
| 14 | 7/4.5 | 1325 | 5,027 | 6.2084 | hallway, elevators, stairs | North, South, East, West 14TH FLOOR |
| 15 | 7/4.5 | 1326 | 5,027 | 6.2084 | hallway, elevators, stairs | North, South, East, West 15TH FLOOR |
| 16/17 | 14/8.5.5 | 1327 | *12,728 | 14.4417 | hallway, elevators, stairs | North, South, East, West 16TH & 17TH FLOORS & ROOF LEVELS |

- 23 -

REEL 3 0 1 7 PG 2 0 1 8

| Unit Designation | Approximate Number of Zoning Rooms/Bathrooms "As Built" | Tax Lot Number | Approximate Size of Unit in Square Feet Unit | Common Interest | Portion of the Common Elements to Which Each Unit Has Immediate Access | Location In Building |
|---|---|---|---|---|---|---|
| Commercial Unit A | 2/2 | 1303 | 6,362 | 4.0562 | hallways, stairs, elevator, street | North, South, West CELLAR, MEZZANINE & 1ST FLOOR |
| Commercial Unit B | 1/0 | 1301 | 1,412 | 0.1221 | hallway, stairs | West |
| Commercial Unit C | 1/0 | 1302 | **251 | 0.0092 | hallway, stairs | South SUB-CELLAR BULKHEAD ROOF BASEMENT AREA |

* INCLUDES:
16TH FLOOR = 5,027 sf
17TH FLOOR = 5,027 sf
PENTHOUSE = 577 sf
INTERIOR AREA =
PENTHOUSE
PRIVATE TERRACE = 1,272 sf
PENTHOUSE ROOF = 825 sf
TOTAL: 12,728 sf

** INCLUDES: UNIT C
AT SUB-CELLAR = 106 sf
18' L.C.E.
AT MECHANICAL
BUCKHEAD ROOF = 145 sf
TOTAL: 251 sf

- 24 -

KFNY2 142A231 -08/6157-0000 / 12714/2000

REEL 3 0 1 7 PG 2 0 1 9

# BY-LAWS

## of

## THE FRANKLIN TOWER

### Article 1.

### General

**Section 1.    Purpose and Definition of Terms**.  The purpose of these By-Laws is to set forth the rules and procedures concerning the conduct of the affairs of THE FRANKLIN TOWER, as well as certain obligations of the Unit Owners therein.  All terms used in these By-Laws which are capitalized and are not defined herein shall have the same definition as in the Declaration of which these By-Laws are a part (such Declaration as amended from time to time being herein referred to as the "Declaration").

**Section 2.    Applicability of By-Laws**.  The provisions of these By-Laws are applicable to the Property and to the use and occupancy thereof.

**Section 3.    Application**.  All present and future Unit Owners, mortgagees, lessees and occupants of Units and their employees or guests, and any other persons who may use the facilities of the Property in any manner are subject to these By-Laws and the Declaration.

The acceptance of a deed or conveyance of, or the succeeding to title to, or the entering into of a lease or the act of occupancy of a Unit shall constitute an agreement that these By-Laws and the provisions of the Declaration, as they may be amended from time to time, are accepted, ratified, and will be complied with.

**Section 4.    Principal Office**.  The principal office of the Condominium and of the Board of Managers (as hereinafter defined) shall be located at 90 Franklin Street, New York, New York, or at such other place within the Borough of Manhattan reasonably convenient thereto, as may be designated from time to time by the Board of Managers.

### Article II

### Board of Managers

**Section 1.    Number and Term of Office**.  As more particularly set forth in these By-Laws and the Declaration, the affairs of the Condominium shall be governed by a board of managers of the Condominium (the "<u>Board of Managers</u>").  From and after the

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 2 0

first meeting of the Unit Owners, the Board of Managers shall be composed of five (5) members.  Until the first meeting of the Unit Owners, the members of the Board of Managers shall consist of three (3) persons appointed by the Declarant.  Each member of the Board of Managers shall serve for a term of one (1) year or until his respective successors shall have been duly appointed or elected, except as provided in Section 1 of Article III.  Each member may be re-elected any number of times.

Section 2.  **Powers and Duties**.  The Board of Managers shall have the powers and duties necessary for administration of the affairs of the Condominium, as agent for the Unit Owners, and may do all such acts and things except as by law or by the Declaration or by these By-Laws may not be delegated to the Board of Managers by the Unit Owners.  Such powers and duties of the Board of Managers shall include, but shall not be limited to, the following:

(a)    Operation, care, upkeep, maintenance, repair, improvement and alteration of the Common Elements.

(b)    Determination of the Common Charges (as hereinafter defined).

(c)    Collection of the Common Charges from the Unit Owners.

(d)    Employment and dismissal of the personnel necessary for the maintenance and operation of the Common Elements (which shall be determined by the Board of Managers, in its sole discretion).

(e)    Adoption of an amendment and additions to the Rules and Regulations subject to the limitations hereinafter set forth in these By-Laws.

(f)    Opening of bank accounts on behalf of the Condominium and designating the signatories required therefor.

(g)    Accepting the conveyance of Units surrendered by Unit Owners to the Board of Managers, or purchasing Units at a foreclosure sale pursuant to Section 7 of Article V, in the name of the Board of Managers, or its designee, corporate or otherwise, on behalf of all Unit Owners (or on behalf of the Unit Owners for whom such Unit was conveyed).

(h)    Selling, leasing, mortgaging, or otherwise dealing with Units acquired by the Board of Managers or its designee, corporate or otherwise, on behalf of all Unit Owners (or on behalf of the Unit Owners for whom such Unit was conveyed), but not casting the votes appurtenant to such Units.

- 25 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3017 PG 2021

(i)    Organizing corporations to act as designees of the Board of Managers in acquiring title to Units on behalf of all Unit Owners (or on behalf of the Unit Owners for whom such Unit was conveyed).

(j)    Obtaining insurance for the Property, including the Units, pursuant to the provisions of Article V, Section 2 hereof, and adjusting and settling any insurance claims thereunder (including executing and delivering releases in connection therewith).

(k)    Making of repairs, restorations, additions and improvements to or alterations of the Common Elements or any part thereof, damaged or destroyed by fire or other casualty, or necessitated as a result of condemnation or eminent domain proceedings.

(l)    Enforcing obligations of Unit Owners, including, without limitation, levying reasonable fines against Unit Owners for violation of the Rules and Regulations.

(m)    Granting of licenses of Common Elements.

(n)    Borrowing money on behalf of the Condominium when required in connection with the operation, care, upkeep, maintenance and alteration of, or the making of repairs, replacements, restorations or additions to the Common Elements, provided that (i) the consent of two-thirds (2/3) in Common Interest of all Unit Owners shall be required for any borrowings in excess of the aggregate amount of $75,000 in any one fiscal year (regardless of the balance of any loans outstanding from previous fiscal years); (ii) no lien to secure repayment of any sum borrowed may be created on any Unit or, except as expressly permitted in Section 339-jj of the Real Property Law, its Appurtenant Interest in the Common Elements without the consent of the owner of such Unit and (iii) the documentation executed in connection with any such borrowing shall provide that, if any sum borrowed by the Board of Managers pursuant to the subparagraph (n) is not repaid by the Board of Managers, any Unit Owner who pays to the creditor thereunder such proportion thereof as his Common Interest bears to the Common Interests of all the Unit Owners shall be entitled to obtain from the creditor a release of any judgment or other lien which said creditor has filed or shall have the right to file against such Unit Owner's Unit.

(o)    Executing, acknowledging and delivering of any declaration or other instrument affecting the Property (i) which the Board of Managers deems necessary or appropriate to comply with any law, ordinance, regulation, zoning resolution or requirement of any

- 26 -

HFNY2: #436338 v2/04367-0000 / 12/02/1999

25 × 10