**A - 3**

REEL 3017 PG 2038

**Section 11.** __Additions, Alterations or Improvements by the Board of Managers.__ Whenever in the judgment of the Board of Managers the Common Elements or the exterior walls of the Building shall require additions, alterations or improvements costing in excess of $100,000.00 in the aggregate in any fiscal year, then such additions, alterations or improvements shall not be made unless first approved by Unit Owners owning Units having an aggregate Common Interest of in excess of 75% of the Common Interests of all the Units and a Majority of the Mortgage Representatives (as defined in Article VI, Section 15). Any additions, alterations or improvements to the Common Elements costing in the aggregate $100,000.00 or less in any fiscal year may be made by the Board of Managers without the approval of the Unit Owners provided same are reasonably necessary to the operations of the Property as a first class building and to the uses to which it is then subject. The cost and expense of any addition, alteration or improvement to the Common Elements shall, except as otherwise provided in the Declaration and these By-Laws including without limitation the Rules and Regulations thereunder, constitute part of the Common Expenses. In making such additions, alterations and improvements, the Board of Managers or its designee shall make all reasonable efforts (i) to minimize any interference with the Unit Owners' use and enjoyment of and any business conducted in their Units and (ii) to conceal in the walls, floors or ceilings or if not feasible, box in without materially reducing usable areas of the affected Unit or its ceiling height, any pipes or conduits installed by the Board of Managers (other than in the portions of the cellar of the Building which are part of the Common Elements).

**Section 12.** __Additions, Alterations or Improvements by Unit Owners.__ Except as permitted in the Declaration:

(a)    No Unit Owner shall make any structural addition, alteration or improvement in or to his Unit, without the prior written consent thereto of the Board of Managers, which consent shall not be unreasonably withheld. The Board of Managers shall have the obligation to answer any written request by a Unit Owner for approval of a proposed structural addition, alteration or improvement in such Unit Owner's Unit within thirty (30) days after such request, and failure to do so within the stipulated time shall constitute a consent by the Board of Managers to the proposed addition, alteration or improvement. Any application to any department of the City of New York or to any other governmental authority for a permit to make an addition, alteration or improvement in or to any Unit permitted hereunder shall be executed by the Board of Managers, without, however, incurring any liability on the part of the Board of Managers to any contractor, subcontractor or materialman on account of such addition, alteration or improvement, or to any person having any claim for injury to person or damage to property arising therefrom.

The owner of Unit 16/17 shall, at any time, have the right to divide such Unit into two separate Residential Units, provided such owner complies with (a) all applicable governmental requirements, and (b) any reasonable requirements imposed by the Board of Managers.

- 43 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25× I[

REEL 3017 PG 2039

(b)    No Unit Owner shall, without obtaining the prior written consent of the Board of Managers construct any additions to the exterior of his Unit (including the exterior walls of the Building encompassing the Unit), make structural changes to any of the Common Elements, or excavate or otherwise alter Common Elements, whether such Common Elements be located in, under or adjacent to the Building.

**Section 13. Right of Access.**  A Unit Owner shall give access to his Unit to the Condominium Board, the manager and/or the managing agent and/or any other person(s) authorized by the Board of Managers, the manager or the managing agent, for the purpose of (i) making inspections or for the purpose of correcting any condition originating in his Unit and threatening another Unit or a Common Element, (ii) performing installations, alterations or repairs to the mechanical or electrical services or other Common Elements in his Unit or elsewhere on the Property, (iii) correcting any condition which violates the provisions of any mortgage covering another Unit, (iv) removing violations of governmental laws or regulations against any part of the Property, (v) curing any defaults under the Declaration and the By-Laws and (vi) removal of trash from the trash rooms, provided that in each case, except as provided below, the requests for entry are made at least one (1) day in advance.  Such right of access shall be exercised in such a manner as will not unreasonably interfere with the normal conduct of business in or use of the Unit.  In case of removal of trash from the trash rooms and in the case of an emergency, such right of access shall be immediate, without advance notice and may occur whether the Unit Owner is present at the time or not.  The foregoing shall not be deemed as prohibiting a Unit Owner from having a representative present when such access is given to the Board of Managers.  No Unit Owner shall impede the removal of trash from his trash room by the Condominium Board, the managing agent or any designee of either of the foregoing and the Unit Owner shall have no right to require that he or a representative be present during such trash removal.

**Section 14. Rules and Regulations.**  Annexed hereto as Schedule A and made a part hereof are rules and regulations concerning the use of the Units and Common Elements (such rules and regulations as amended from time to time are sometimes herein referred to as the "Rules and Regulations").  Except as provided in the Declaration, the Board of Managers may from time to time amend such Rules and Regulations in such manner as shall be reasonably necessary for the proper operation of the Building, except that (i) a Majority in Common Interest of the Unit Owners may overrule the Board of Managers with respect to any such amendment and (ii) no such amendment may be made without the prior written consent of any (x) a Majority of the Mortgage Representatives, if any, which consent shall not be unreasonably withheld or delayed, and (y) the Construction Lender, for so long as it has a lien on any Unit, and (iii) no amendment may be made which may have an adverse affect on the Commercial Unit Owner, or Declarant or its designees, or the Units owned by any of them, unless approved in writing by such Commercial Unit Owner, the Declarant or its designees, as the case may be.  Copies of such Rules and Regulations as amended shall be furnished by the Board of Managers to each Unit Owner not less than thirty (30) days prior to the effective date thereof.  The terms "amend,"

- 44 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3017 PG 2040

"amended" or "amendment," as used in this Section, shall also mean deleting or adopting a rule or regulation.

**Section 15. Real Estate Taxes.** Except as provided below, until the Units are separately assessed for real estate tax purposes, the Board of Managers as agent of the Unit Owners shall promptly pay all real estate taxes levied with respect to the Property as a Common Expense and the Common Charges collected from Unit Owners to meet this Common Expense shall be earmarked for this purpose.

**Section 16. Water Charges and Sewer Rents.** If there are water charges and sewer rents assessed against the Property, then, unless and until such charges are separately billed to each Unit Owner by the appropriate authority, such charges shall promptly be paid by the Board of Managers as a Common Expense. If any of the Units are separately metered or submetered for water then the owner thereof shall directly pay to the proper authority the water charges and sewer rents computed on the basis of the consumption metered for his Unit and such Unit Owner shall not be responsible for paying water and sewer charges as part of his Common Charges. The Commercial Units will bear a pro-rata share of the water charges allocable to the Common Elements, initially estimated by Laszlo Bodak Engineer P.C. at $500, based on their respective Common Interest. It is anticipated that no water will be supplied to Commercial Units B and C and that such Unit Owners will not bear any additional expense therefor. Unless separately metered or sub-metered, the reasonable cost of water and sewer allocable to Commercial Unit A shall be based on an energy survey to be obtained by the Owner of such Unit when occupancy of such Unit commences.

**Section 17. Gas.** Gas may be supplied by the public utility company serving the area to each Unit for cooking and/or laundry purposes through separate meters and the owner of such Unit shall be required to pay the bills for gas consumed or used in his Unit. To the extent that gas is supplied to more than one Unit measured by a meter for such Units, the cost of such gas shall be a Common Expense payable by the owners of such Units. It is anticipated that no gas will be supplied to Commercial Units B and C and that such Unit Owners will not bear any additional expense therefor. Unless separately metered or sub-metered, the reasonable cost of gas allocable to Commercial Unit A shall be based on an energy survey to be obtained by the Owner of such Unit when occupancy of such Unit commences.

**Section 18. Electricity.** Electricity for the Units shall be supplied by the public utility company serving the area directly to each Unit through a separate meter and the owner of such Unit shall be required to pay the bills for electricity consumed or used in his Unit. If one such meter measures the consumption of electricity in more than one Unit, then all such Units shall pay their pro rata share (as reasonably determined by the Board of Managers) of the consumption of electricity measured by such meter. Except as provided in Section 9 of the Declaration, a Unit Owner shall not exceed the capacity of existing feeders, risers or wiring installations and shall not use any electrical equipment

HFNY2: #436338 v2/34267-0000 / 12/02/1999

25×

REEL 3017 PG 2041

which in the reasonable opinion of the Board of Managers will overload such feeders, risers or installations.

**Section 19.  Heating.**  The Board of Managers shall supply heat to the Residential Units during such times as the Board of Managers shall establish from time to time, provided that heat shall be supplied at least at such times as is required by law in multiple dwellings.  The cost of furnishing same shall constitute a Common Expense payable by all Unit Owners receiving the benefit of such utility.  If any Commercial Unit shall be separately heated, it shall no longer be responsible to pay any portion of the Common Charges allocable to heat.

**Section 20.  Vault Charges.**  All license fees and all periodic taxes and charges for vaults or other protrusions beyond the Building line assessed against the Property shall be fairly and equitably apportioned by the Board of Managers between or among the Units having the right to use such vault or other protruding space.

**Section 21.  Utilities Serving the Common Elements.**  The costs and expense of heat, water and sewer, electricity and gas serving or benefitting the Common Elements shall be a Common Expense to be borne by all Unit Owners.

**Section 22.  Interruption in Utilities.**  The Board of Managers shall have the right to interrupt all utilities for the purposes of dealing with accidents, strikes and repairs, alterations, improvements, and the like.  The Board of Managers shall have no liability to any Unit Owner for any such interruption.  However, the Board of Managers shall make all reasonable efforts to minimize the extent of such interference.

**Section 23.  Miscellaneous Budget Items.**  Notwithstanding anything to the contrary herein, the Commercial Unit Owner will share, based upon its Common Interests fifty percent (50%) of the cost of the budget items for (i) repairs, maintenance and supplies; (ii) management (iii) the portion of the elevator contracts allocable to one elevator.  The Commercial Unit Owner shall also pay a pro rata share (based on its Common Interests) of the service contracts for the sprinkler/fire alarm system, and exterminating, but not any other service contracts.  The Commercial Unit Owner shall bear a pro rata share (based on the aggregate Common Interests of the Commercial Units) of the cost of the concierge/superintendent and one porter but not any other employee.  The Commercial Unit Owner shall pay an amount for "contingency" in the proportion that the Common Expenses payable by the Commercial Unit Owner for all budget items (other the "contingency") bears to all Common Expenses (other than "contingency").  In addition, if the Board of Managers incurs any increase in insurance premiums as a direct result of an increase in insurance risk resulting from any special use of a Commercial Unit, the Commercial Unit Owner shall bear the cost of any such increase in insurance premiums over the premiums that would be charged but for the extra insurance risk due to the use of such Commercial Unit.

HFNY2: #456338 v2/04207-0000 / 12/02/1999

25×

REEL 3 0 1 7 PG 2 0 4 2

## Article VI

### Selling, Leasing and Mortgaging of Units

**Section 1.** **Notice to Board of Managers.** A Unit Owner who mortgages his Unit shall notify the Board of Managers of the name and address of his mortgagee and shall file a conformed copy of the note and mortgage with the Board of Managers. Subject to the priority of the lien of a Permitted Mortgage with respect to all unpaid sums due under such Permitted Mortgage and such other rights, if any as may appertain to a Permitted Mortgagee under Sections 339-z of the Real Property Law of the State of New York, the rights of any mortgagee of a Unit shall be subordinate to the terms and provisions of the Declaration, By-Laws and Rules and Regulations, including, without limitation, the provisions of Section 9 of the Declaration, and any such mortgage that fails to provide for such subordination shall nonetheless be deemed to provide for such subordination; provided that no revocation or amendment to Section 339-z of the Real Property Law of New York shall affect such lien priority. Although no further instrument shall be required to effectuate such subordination, each mortgagee of a Unit, by accepting such mortgage, agrees to execute and deliver any instruments and documents requested to be executed and delivered by the Board of Managers in connection with the confirmation of such subordination, and, in the event such mortgagee fails to execute and deliver any such instruments or documents, its acceptance of such mortgage shall be deemed to constitute its appointment of the Board of Managers as its true and lawful attorney-in-fact in its name, place and stead to execute and deliver any such instruments and documents, such power being coupled with an interest. A Unit Owner who satisfies a mortgage covering his Unit shall also notify the Board of Managers thereof and shall file a conformed copy of the satisfaction of mortgage with the Board of Managers. The Board of Managers shall maintain the information received pursuant to this Section 1 in a book entitled "Mortgages of Units."

**Section 2.** **Notice of Default and Unpaid Common Charges.** Whenever so requested in writing by the mortgagee of a Unit, the Board of Managers shall promptly report to such mortgagee any default in the payment of Common Charges or any other default by the Unit Owner of such Unit under the provisions of the Declaration or these By-Laws, which default may to the Board's knowledge then exist. The Board of Managers, when giving notice to a Unit Owner of any such default, shall also send a copy of such notice to each holder of a mortgage covering such Unit whose name and address shall have theretofore been furnished to the Board of Managers.

**Section 3.** **Performance by Mortgagees.** The Board of Managers shall accept payment of any sum or performance of any obligation by any mortgagee of a Unit Owner required to be paid or performed by such Unit Owner pursuant to the provisions of the Declaration, these By-Laws or the Rules and Regulations with the same force and effect as though paid or performed by such Unit Owner.

- 47 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3017 PG 2043

**Section 4.  Examination of Books.** Each Unit Owner and each mortgagee of a Unit shall be permitted to examine the books of account of the Condominium at reasonable times, on business days, but not more than once a month.

**Section 5.  Selling and Leasing.** Except as provided in Section 10 of this Article VI no Residential Unit Owner may sell or lease his Residential Unit, without complying with the following provisions:

Any such Residential Unit Owner who receives a bona fide offer to (a) purchase his Unit covered by the provisions of this Section 5 ("Offeree Unit") together with its Appurtenant Interest or (b) lease his Offeree Unit (such offer to purchase or lease an Offeree Unit, as the case may be, is called an "Offer", the party making any such Offer is called an "Offeror" and the owner of the Offeree Unit to whom the Offer is made is called an "Offeree"), which he intends to accept shall give notice by certified or registered mail to the Board of Managers of the receipt of such Offer. Said notice shall also state the name and address of the Offeror, the terms of the proposed transaction (including, but not limited to, the intended closing date in the event of a purchase or the intended occupancy date in the event of a lease) and such other information as the Board of Managers may reasonably require. The giving of such notice to the Board of Managers shall constitute an offer by such Unit Owner to sell (or lease, as the case may be) his Offeree Unit to the Board of Managers, or its designee, on behalf of all other Unit Owners, upon the same terms and conditions as contained in such Offer and shall also constitute a representation and warranty by the Offeree who has received such Offer, to the Board of Managers on behalf of all Unit Owners, that such Offeree believes the Offer to be bona fide in all respects. The Offeree shall submit in writing such further information with respect thereto as the Board of Managers may reasonably request. Not later than fifteen (15) days after receipt of such notice together with such further information as may have been requested, the Board of Managers may elect, by sending written notice to such Offeree before the expiration of said fifteen (15) day period, by certified or registered mail, to purchase such Offeree Unit together with its Appurtenant Interest or to lease such Offeree Unit, as the case may be (or to cause the same to be purchased or leased by its designee), on behalf of all Unit Owners, upon the same terms and conditions as contained in the Offer and as stated in the notice from the Offeree.

If the Board of Managers shall timely elect to purchase such Offeree Unit together with its Appurtenant Interest or to lease such Offeree Unit, or to cause the same to be purchased or leased by its designee, title shall close or a lease shall be executed at the office of the attorneys for the Board of Managers, in accordance with the terms of the Offer, within forty-five (45) days after the giving of notice by the Board of Managers of its election to accept the aforesaid Offer, and the Board of Managers shall then be required to perform or cause to be performed all of the terms of the Offer (except as otherwise expressly set forth in this Article VI) including, but not limited to, payment of a Down Payment or advance rentals and

- 48 -

25×

REEL 3 0 1 7 PG 2 0 4 4

security deposits, or closing of title or acceptance of occupancy, as the case may be and such closing of title or the commencement of the term of the lease shall be on the date set forth in the notice to the Board of Managers referred to in this Section 5 of Article VI as the intended closing date or commencement date, as the case may be. If pursuant to such Offer, the Offeror was to assume, or take title to the Offeree Unit subject to, the Offeree's existing mortgage or mortgages, the Board of Managers may purchase the Offeree Unit and assume, or take title to the Offeree Unit subject to, said existing mortgage or mortgages, as the case may be. At the closing, the Offeree, if such Offeree Unit together with its Appurtenant Interest is to be sold, shall convey the same to the Board of Managers or its designee, corporate or otherwise, on behalf of all other Unit Owners, by deed in the form required by Section 339-0 of the Real Property Law of the State of New York with all tax and/or documentary stamps affixed at the expense of such Offeree, who shall also pay all other taxes arising out of such sale. Real estate taxes (including water charges and sewer rents if separately assessed), mortgage interest, if any, and Common Charges shall be apportioned between the Offeree and the Board of Managers, or its designee, corporate or otherwise, as of the closing date. In the event such Offeree Unit is to be leased, the Offeree shall execute and deliver to the Board of Managers, or its designee, a lease between the Offeree, as landlord, and the Board of Managers, or its designee, as tenant, covering such Offeree Unit, for the rental and term contained in such Offer.

If the Board of Managers, or its designee shall fail to accept such Offer within fifteen (15) days after receipt of notice, as aforesaid, the Offeree shall have an additional ninety (90) days (immediately following such fifteen 15 day period) to accept the Offer by executing and delivering a contract or lease, as the case may be. If the Offeree shall not, within such ninety (90) day period, accept in writing the Offer or if the Offeree shall accept the Offer within such ninety (90) day period but such sale or lease, as the case may be, shall not be consummated on or before the intended closing date or commencement date of the term of the lease, as the case may be, which is set forth in the notice to the Board of Managers referred to in this Section 5 of Article VI, then, should such Offeree thereafter elect to sell or lease such Offeree Unit, as the case may be, the Offeree shall be required to comply again with all the terms and provisions of this Section.

Any deed to an Offeror shall be deemed to provide that the acceptance thereof by the grantee shall constitute an assumption of the provisions of the Declaration, these By-Laws and the Rules and Regulations, as the same may be amended from time to time.

Any lease executed in connection with the acceptance by an Offeree of any Offer to lease an Offeree Unit shall be consistent with these By-Laws and shall provide that it may not be modified, amended, extended or assigned without the prior consent in writing of the Board of Managers, that the tenant shall not assign his interest in such lease or sublet the demised premises or any part thereof without

- 49 -

25 × 0

REEL 3017 PG 2045

the prior consent in writing of the Board of Managers and that the Board of Managers shall have power to terminate such lease and/or to bring summary proceedings to evict the tenant in the name of the landlord thereunder, in the event of (i) a default by tenant in the performance of its obligations under such lease or (ii) a foreclosure of the lien granted by Section 339-z of the Real Property Law of the State of New York.

Any lease executed by the Board of Managers as tenant shall provide that the Board of Managers may enter into a sublease of the premises without the consent of the landlord.

Any purported sale or lease of an Offeree Unit in violation of this Section 5 of Article VI shall be voidable at the election of the Board of Managers and if the Board of Managers shall so elect, the Offeree shall be deemed to have authorized and empowered the Board of Managers to institute legal proceedings to evict the purported tenant (in case of an unauthorized leasing), in the name of the said Offeree as the purported landlord. Said Offeree shall reimburse the Board of Managers for all expenses (including, without limitation, attorneys' fees and disbursements) incurred in connection with such proceedings.

**Section 6. <u>Consent of Unit Owners to Purchase or Lease of Offeree Units by Board of Managers</u>.** The Board of Managers shall not exercise any option hereinabove set forth to purchase or lease any Offeree Unit without the prior approval of a Majority in Common Interest of Unit Owners. However, the Board of Managers shall have the right to release or waive such option without the prior approval of a Majority in Common Interest of Unit Owners.

**Section 7. <u>No Severance of Ownership</u>.** No Unit Owner shall execute any deed, mortgage or other instrument conveying or mortgaging title to his Unit without including therein its appurtenant Common Interest, it being the intention to prevent any severance of such combined ownership. Any such deed, mortgage or other instrument purporting to affect one or more of such interests without including all such interests shall be deemed and taken to include the interest or interests so omitted even though the latter shall not be expressly mentioned or described therein. No part of the Common Interest appurtenant to any Unit may be sold, conveyed or otherwise disposed of, except as part of a sale, conveyance or other disposition of the Unit to which such interest is appurtenant or as part of a sale, conveyance or other disposition of such part of the appurtenant Common Interests of all Units. Nothing in this Section shall prohibit the lease of any Unit without the simultaneous lease of its appurtenant Common Interest.

**Section 8. <u>Waiver of Right of Partition with Respect to Units Acquired on Behalf of Unit Owners as Tenants-in-Common</u>.** If any Unit shall be acquired by the Board of Managers, or its designee, on behalf of all Unit Owners, as tenants-in-common, all such Unit Owners shall be deemed to have waived all rights of partition with respect to such acquired Unit.

- 50 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3 0 1 7 PG 2 0 4 6

**Section 9.  Financing of Purchase of Offeree Units by Board of Managers.** The purchase of any Offeree Unit by the Board of Managers or its designee, on behalf of all Unit Owners, may be made from the funds deposited in the capital and/or expense accounts of the Board of Managers.  If the funds in such account are insufficient to effectuate any such purchase, the Board of Managers may levy an assessment against each Unit Owner, in proportion to his respective Common Interest, as a Common Charge, and/or the Board of Managers may, in its discretion, finance the acquisition of such Offeree Unit, provided, however, that no such financing may be secured by an encumbrance or hypothecation of any portion of the Property other than the Offeree Unit to be purchased together with its Appurtenant Interest.

**Section 10.  Exceptions.**  The provisions of Section 5 of Article VI shall not apply to (A) any Commercial Unit or any condominium units created by subdivision or combination of a Commercial Unit from time to time, or any part thereof, (B) any Unit transferred by a Unit Owner by gift, devise, will or intestacy, or (C) any lease, sale or conveyance of any Offeree Unit together with its Appurtenant Interest by (1) the Unit Owner thereof to his spouse, adult children, parents, adult siblings or to any one or more of them or to any affiliate of the Unit Owner thereof; (2) any Commercial Unit Owner, Declarant or any of its designees; (3) the Board of Managers; or (4) the sale, transfer or lease of a Unit by or to a mortgagee or its nominee (including, without limitation, a foreclosure); provided, however, that each succeeding Offeree shall be bound by, and his Offeree Unit subject to, the provision of this Article VI.  The term "affiliate", when used with respect to any Unit Owner, means an individual who (or entity which) owns more than 50% of the legal or beneficial interest in such Unit Owner, or any entity in which such Unit Owner owns more than a 50% interest, legal or beneficial.

**Section 11.  Gifts and Devises, etc.**  Any Unit Owner shall be free to convey or transfer his Unit by gift, or may devise his Unit by will or have his Unit pass by intestacy, without restriction, provided, however, that each succeeding Unit Owner shall be bound by, and his Unit subject to, the provisions of this Article VI.

**Section 12.  Payment of Assessments.**  No Unit Owner shall be permitted to convey, mortgage, pledge, hypothecate or lease his Unit unless and until he shall have paid in full to the Board of Managers all unpaid Common Charges theretofore assessed by said Board against such Unit and until such Unit Owner shall have satisfied all unpaid liens against his Unit, other than any mortgages.

**Section 13.  Mortgage of Units.**  Each Unit Owner shall have the right to mortgage his Unit without restriction.  However, the Unit Owner shall comply with the provisions of Section 1 of this Article VI.

**Section 14.  Permitted Mortgage.**  The term "Permitted Mortgagee" shall mean a holder of a Permitted Mortgage.  The term "Permitted Mortgage" shall mean any first mortgage of record against a Unit.  For so long as the Construction Loan or any portion

- 51 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3017 PG 2047

thereof is outstanding, the Construction Loan shall be deemed to be a Permitted Mortgage and the Construction Lender shall be deemed to be a Permitted Mortgagee.

**Section 15. Mortgage Representatives.** The term "Mortgage Representatives" shall mean the representatives of the holders of all mortgages encumbering Units, designated by the holders of "Institutional Mortgages" (defined below) in accordance with the terms of this Article VI, Section 15.

Except as otherwise provided for herein or in the Declaration, no consent or approval by any mortgagee shall be required with respect to any determination or act of the Condominium Board or any Unit Owner, provided, however, that nothing contained herein shall be deemed to limit or affect the rights of any mortgagee against his mortgagor. In the event that any such consent or approval shall be expressly required pursuant to the terms of the Declaration or these By-Laws, the decision of a majority of Mortgage Representatives, if any, designated pursuant to the terms of this Section 15 of Article VI, shall be deemed binding on the holders of all mortgages encumbering Units.

The holders of Institutional Mortgages constituting a majority in principal amount of all Institutional Mortgages may, if they so elect designate not more than three Mortgage Representatives by giving written notice thereof to the Condominium Board, which Mortgage Representatives shall thereby be empowered to act as the representatives of the holders of all mortgages encumbering Units with respect to any matter requiring the consent or approval of mortgagees under the Declaration or these By-Laws. Any designation of a Mortgage Representative pursuant to the terms of this Article VI, Section 15, shall be effective until any successor Mortgage Representative is designated pursuant to the terms hereof and written notice thereof is given to the Condominium Board. Unless otherwise required by law, no holders of mortgages encumbering Units other than Permitted Mortgagees who hold Institutional Mortgages shall be entitled to participate in the designation of Mortgage Representatives, but all holders of mortgages encumbering Units shall be subject to all determinations made by the Mortgage Representatives pursuant to the terms of the Declaration or these By-Laws.

The term "Institutional Lender" shall mean (i) the Construction Lender, for so long as the Construction Loan is a lien on any Unit (ii) a savings bank, savings and loan association, bank or trust company, credit union, insurance company, real estate investment trust, or mortgage trust, or (iii) a federal, state, municipal, teacher's or union employee, welfare, pension or retirement fund or system.

**Article VII**

**Eminent Domain**

**Section 1. Condemnation.** In the event of a taking in condemnation or by eminent domain of part or all of the Common Elements, the award made for such taking shall be payable to the Board of Managers if such award amounts to $100,000.00 or less,

- 52 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 30 1 7 PG 2 0 4 8

and to the Insurance Trustee if such award amounts to more than $100,000.00  If 75% or more in Common Interest of all Unit Owners duly and promptly approve the repair and restoration of such Common Elements, the Board of Managers shall arrange for the repair and restoration of such Common Elements, and the Board of Managers, or the Insurance Trustee, as the case may be, shall disburse the proceeds of such award to the contractors engaged in such repair and restoration in appropriate progress payments.  If the net proceeds of any such award are insufficient to cover the cost of any repairs or restorations, the deficit will be a Common Expense.  If 75% or more in Common Interest of all Unit Owners do not duly and promptly approve the repair and restoration of such Common Elements, or if there are excess proceeds remaining after such repair or restoration, then in such event the Board of Managers, or the Insurance Trustee, as the case may be, shall disburse the net proceeds of such award in the same manner as they are required to distribute insurance proceeds where there is no repair or restoration of the damage, as provided in Section 3 of Article V of these By-Laws.  In the event of a partial taking by condemnation or by eminent domain which results in a disproportionate taking of the space of each Unit so that one Unit is left with proportionately less space compared to the other Unit than was the case prior to such taking, then the Common Interests of the Unit Owners shall be equitably adjusted by the Board of Managers.

   **Section 2.  Awards for Trade Fixtures and Relocation Allowances.**  Where all or a part of the Condominium is taken in condemnation or by eminent domain, each Unit Owner shall have the exclusive right to claim all of the award made for trade fixtures installed by such Unit Owner, and any relocation, moving expense or other allowance of a similar nature designed to facilitate relocation of a displaced business concern.

## Article VIII

## Records

   **Section 1.  Records and Audits.**  The Board of Managers or the managing agent shall keep detailed records of the actions of the Board of Managers and the managing agent, minutes of the meetings of the Board of Managers, minutes of the meetings of the Unit Owners, and financial records and books of account of the Condominium, including a chronological listing of receipts and expenditures, as well as a separate account for each Unit which, among other things, shall contain the amount of each assessment of Common Charges against each Unit, the date when due, the amounts paid thereon, and the balance remaining unpaid. An annual report of the receipts and expenditures of the Condominium, certified by an independent certified public accountant, shall be rendered by the Board of Managers to all Unit Owners and to all mortgagees of Units who have requested the same, within four (4) months after the end of each fiscal year.  The cost of such report shall be paid by the Board of Managers as a Common Expense.

- 53 -

25×

REEL 3017 PG 2049

# Article IX

## Miscellaneous

**Section 1.  Notices.** All notices hereunder shall be sent by registered or certified mail to the Board of Managers c/o the managing agent, or if there be no managing agent, to the office of the Board of Managers or to such other address as the Board of Managers may hereafter designate from time to time, by notice in writing to all Unit Owners and to all mortgagees of Units. All notices to any Unit Owner shall be sent by registered or certified mail to the Property or to such other address as may have been designated by him from time to time, in writing, to the Board of Managers. All notices shall be deemed to have been given or served when sent as provided above as of the date of mailing, except notices of change of address which shall be deemed to have been given when received.

**Section 2.  Severability.** If any provision of these By-Laws is invalid or unenforceable against any person, party or under certain circumstances, the remainder of these By-Laws and the applicability of such provision to other persons, parties or circumstances shall not be affected thereby. Each provision of these By-Laws shall, except as otherwise herein provided, be valid and enforced to the fullest extent permitted by law.

**Section 3.  Captions.** The captions herein are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of these By-Laws, or the intent of any provision hereof.

**Section 4.  Gender.** The use of the masculine gender in these By-Laws shall be deemed to include the feminine gender and the use of the singular shall be deemed to include the plural, whenever the context so requires.

**Section 5.  Waiver.** No restriction, condition, obligation or provision contained in these By-Laws including without limitation the Rules and Regulations shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, irrespective of the number of violations or breaches thereof which may occur.

**Section 6.  Title to Units.** Title to Units may be taken in the name of an individual, the names of two or more persons as tenants in common, joint tenants or tenants by the entireties, in the name of a corporation, partnership, association, trustee or other legal entity, or any combination of any of the foregoing.

**Section 7.  Successors and Assigns.** The rights and/or obligations of the Unit Owners as set forth in these By-Laws and the Declaration shall inure to the benefit of and be binding upon the Board of Managers and the Unit Owners and their successors and assigns.

- 54 -

25×

REEL 3017 PG 2050

**Section 8.    Insurance Trustee.** The Construction Lender, or its successors, assigns, or designee, at its option, shall be the Insurance Trustee so long as the Construction Lender is the holder of a certain mortgage made by Declarant to such Construction Lender, and thereafter a bank or trust company in the State of New York, designated by the Board of Managers and having a capital surplus and undivided profits of $500,000,000 or more. In the event the Insurance Trustee resigns or is replaced by the Board of Managers, the Board of Managers shall appoint a new Insurance Trustee which shall be a bank or trust company having an office located in the State of New York having a capital surplus and undivided profits of $500,000,000 or more. The Board of Managers shall pay the fees and disbursements of any Insurance Trustee and such fees and disbursements shall constitute a Common Expense. The Insurance Trustee shall hold all such proceeds in accordance with Section 254(4) of the New York Real Property Law.

**Section 9.    Consents.** Wherever in this Declaration or these By-Laws the consent of the Board of Managers is provided, such consent shall be sufficient and effective if given by the Board of Managers and the consent of the Unit Owners shall, unless otherwise provided in the Declaration or these By-Laws, not be required.

**Article X**

**Amendments to By-Laws**

**Section 1.    Amendments to By-Laws.** Except as provided in the Declaration and below, these By-Laws may be amended by the vote of not less than 80% in number and in Common Interest of all Unit Owners, at a meeting of the Unit Owners duly held for such purpose, provided, however, that (i) if Declarant or its designees and a majority in Common Interest of the Commercial Unit Owners, as the case may be, shall not have voted in favor of such amendment, then such amendment shall not be effective unless reasonably necessary or convenient to the conduct of the affairs of the Condominium and/or operation of the Property and such amendment shall not decrease the rights of any Commercial Unit Owner, the Declarant or its designees or increase the obligations of any Commercial Unit Owner, Declarant or its designees and (ii) such amendment shall not be effective against a holder of a mortgage of record affecting a Unit, unless a Majority of the Mortgage Representatives shall consent thereto in writing which consent shall not be unreasonably withheld or delayed, and, as to any Unit encumbered by the Construction Loan, the Construction Lender consents thereto; however the Construction Lender may grant or withhold its consent as it sees fit) . Notwithstanding anything to the contrary contained herein, without the consent of every Unit Owner affected by such amendment, (a) no provision of these By-Laws (including, without limitation, the Rules and Regulations) relating to the use of Units or appurtenant Common Interests may be amended, (b) no By-Law may be amended which would in any way affect the rights of the Commercial Unit Owner or Declarant or its designees under Section 9 or Section 11 of the Declaration and (c) the provisions of this Article X may not be amended. The terms "amend," "amended"

- 55 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

25×

REEL 3 0 1 7 PG 2 0 5 1

or "amendment" as used in these By-Laws shall also be deemed to mean deleting a provision of the By-Laws or adopting a new By-Law.

## Article XI

### Conflicts

These By-Laws (including without limitation the Rules and Regulations) are intended to comply with the requirements of Article 9B of the Real Property Law of the State of New York and all other applicable laws. In case any of these By-Laws or any provision of the Rules and Regulations shall conflict with the provisions of said statute, the Declaration or any other applicable law, then the provisions of said statute, the Declaration or such other applicable law, as the case may be, shall control.

## Article XII

### Arbitration

An arbitration provided for in these By-Laws shall be conducted before one arbitrator in New York City by the American Arbitration Association or any successor organization thereof, in accordance with its rules then in effect and the decision rendered in such arbitration shall be binding upon the parties and may be entered in any court having jurisdiction. If the American Arbitration Association shall not then be in existence and has no successor, any arbitration hereunder shall be conducted in New York City before one arbitrator appointed, on application of any party, by the Supreme Court of the State of New York, in the County of New York. Each party to any such arbitration shall bear his own legal fees and expenses and other fees and expenses in prosecuting and/or defending, as the case may be, the arbitration. However the cost of the arbitrator shall be borne by the losing party. All costs and expenses of the Board of Managers in any such arbitration hereunder, including the fees and expenses of counsel and experts, shall be a Common Expense.

- 56 -

HFNY2: #436338 v2/04267-0600 / 12/02/1999

25×

REEL 3017 PG 2052

### SCHEDULE A OF THE BY-LAWS

### RULES AND REGULATIONS OF THE CONDOMINIUM

b.    Each Unit Owner shall keep his unit in a good state of preservation and cleanliness. He shall not allow anything whatever to fall from the windows or doors of the Building, nor shall he sweep or throw from the Building any dirt or other substance into any of the corridors or halls, elevators, ventilators or elsewhere in the Building. The Unit Owners shall place their refuse in containers in such manner, at such times and in such places as the Board of Managers or its agent may direct.   The Unit Owners shall obtain extermination services for the Units at such intervals as shall be necessary to maintain the Units free of rats, mice, roaches and other vermin.

c.    Except as otherwise expressly provided in the Declaration, the sidewalks, entrances, corridors, exits and other Common Elements shall not be obstructed or encumbered by refuse or otherwise, or used for any purpose other than ingress or egress to and from the Units and delivering and shipping of merchandise and the like to and from the Units.

d.    Employees of the Unit Owners' may not gather or lounge in the Common Elements.

e.    Supplies, goods and packages of every kind for the Units are to be delivered in such manner as the Board of Managers or its agent may reasonably prescribe and the said Board of Managers is not responsible for loss of or damage to any such property, including loss or damage that may occur through the carelessness or negligence of the employees of the Building.

f.    No disturbing noises or objectionable odors may be produced upon or emanate from any Residential Unit including, without limitation, from any musical instrument, phonograph, radio, television, receiver or similar instrument if the same shall disturb or annoy any other Unit Owner. Corridor doors shall be kept closed at all times except when in actual use for ingress and egress.

g.    Unit Owners shall not permit or keep in their Residential Units any inflammable, combustible or explosive material, chemical or substance, except such products as are required in normal professional and business use.

h.    Water closets and other water apparatus in the Building shall not be used for any purpose other than those for which they were designed, nor shall any sweepings, rubbish bags or other articles be thrown into same. Any damage

- 57 -

HFNY3: #436338 v2/04267-0000 / 12/02/1999

25×10

REEL 3017 PG 2053

resulting from misuse of any water closets or other apparatus in a Unit shall be repaired and paid for by the owner of such Unit.

i.      No vehicle belonging to a Unit Owner or to an employee, or visitor of a Unit Owner shall be parked in such manner as to impede or prevent ready access to any entrance to or exit from the Building or Common Elements by any vehicle of any kind whatsoever.

j.      Except as provided in Section 9 of the Declaration, no Unit Owner shall (i) do or permit any act or thing to be done in or to his Unit which will invalidate or be in conflict with any public liability, fire, casualty or other policy of insurance at any time carried by the Board of Managers with respect to the Property, (ii) keep anything in his Unit which is prohibited by the Fire Department, Board of Fire Underwriters, fire insurance rating organization or other authority having jurisdiction or (iii) permit a Unit to be used in any manner (other than the use in effect on the date of the Declaration) which will increase the insurance rate for the Property over that in effect as of the date of the Declaration unless such Unit Owner paid the additional cost thereof as provided below.

Any costs, expenses, fines, penalties or damages which shall be imposed upon the Board of Managers by reason of a Unit Owner's default hereunder or any increase in the premium charged for insurance carried by the Board of Managers resulting from a change in the insurance rate for the Property attributable to a use of the Unit which is different from the use of the Unit in effect on the date of the Declaration, shall be assessed as a Common Charge against the Unit Owner. In any action or proceeding relating to the foregoing, a schedule or "makeup" of rate for the Property issued by the New York Fire Insurance Exchange or other body making fire insurance rates applicable to the Property shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate or rates then applicable to the Property.

Each Unit Owner may carry other insurance for his own benefit, provided that all such policies shall contain waivers of subrogation, and further provided that the liability of the carriers issuing insurance obtained by the Board of Managers shall not be affected or diminished by reason of any such additional insurance carried by such Unit Owner.

k.      Except as provided in Section 9 of the Declaration, no Unit Owner shall place a load upon any floor of his Unit exceeding the floor load per square foot area which it was designed to carry and which is allowed by law.

l.      If any key or keys are entrusted by a Unit Owner or occupant or by any member of his family or by his agent, servant, employee, licensee or visitor to an employee of the Board of Managers, whether for such Unit or an automobile, trunk or other item of personal property, the acceptance of the key shall be at the sole risk of such Unit Owner or occupant, and the Board

- 58 -

HFNY2: #436338 v2/04267-0000 / 12/02/1999

REEL 3 0 1 7 PG 2 0 5 4

of Managers shall not be liable for injury, loss or damage of any nature whatsoever directly or indirectly resulting therefrom or connected therewith.

m.    No Unit Owner shall alter, impair or otherwise affect the Common Elements without the prior written consent of the Board of Managers, except as expressly permitted herein or in the Declaration or the By-Laws.

n.    Each Unit Owner shall:

    i.    obtain and keep in full force and effect any governmental license or permit required for the proper and lawful conduct of any business carried on in his Unit, and shall submit same for inspection by the Board of Managers;

    ii.    Keep clean at all times the interior and exterior of windows and doors (including in each case, the frames thereof) in his Unit, with all such work to be done in conformity with law;

    iii.    Promptly replace any and all broken or damaged glass (including in windows) in his Unit and the frames for such glass, regardless of the cause of such damage, including the negligence of the Board of Managers, its agents or employees without waiving any claims which such Unit Owner may have by reason of any of the foregoing;

    iv.    Not at any time, either directly or indirectly, use any contractors and/or labor and/or materials in connection with alterations or improvements to his Residential Unit, if the use of such contractors and/or labor and/or materials would or will create any difficulty with other contractors and/or labor engaged by the Board of Managers and/or the other Unit Owners in the maintenance and/or operation of the Building and/or the other Units;

o.    Any amounts assessed against a Unit as Common Charges which are in addition to the regular monthly installments of Common Charges due and payable as provided in the By-Laws shall be paid to the Board of Managers upon demand or if not demanded then with the next monthly installment of Common Charges due and payable as provided in the By-Laws.

p.    No servant or employee of the Board of Managers or its managing agent shall be sent out of the Building by any Unit Owner at any time for any purpose.

q.    Complaints regarding services or operation of the Building shall be made in writing to the Board of Managers or its managing agent.

- 59 -

HFNY2: #426338 v2/04267-0000 / 12/02/1999

25×

REEL 3 0 1 7 PG 2 0 5 5

r.  Any consent or approval given under these Rules and Regulations may be added to, amended or repealed at any time by resolution of the Board of Managers, except that, where a consent or approval may not be unreasonably withheld as herein elsewhere provided, then such consent may be added to, amended or repealed as set forth above provided such addition, amendment or repeal is not unreasonably made. A Unit Owner may apply to the Board of Managers for a temporary waiver of one or more of the foregoing Rules. Such temporary waiver may be granted by the Board of Managers, for good cause shown, if, in the Board's judgment, such temporary waiver will not interfere with the purposes for which the Condominium was formed.

s.  The fiscal year of the Condominium shall begin on the first day of January in each year or on such other date as the Board of Managers shall establish from time to time.

t.  Except as provided in the Declaration no sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed from any Residential Unit on any part of the outside of the Building, hung from windows or placed on window sills in or on any Residential Unit, without the prior written consent of the Board of Managers.

u.  No pets other than dogs, cats caged birds and fish (which do not cause a nuisance, health hazard or unsanitary condition) may be kept in a Residential Unit without the consent of the Condominium Board or the Managing Agent. Any Unit Owner who wishes to keep more than two pets in his or her Unit must obtain the prior written consent of the Condominium Board.  Each Residential Unit Owner who keeps any type of pet in his Unit will be required to (a) indemnify and hold harmless the Condominium, all Unit Owners and the Managing Agent from all claims and expenses resulting from acts of such pet; and (b) abide by any and all reasonable Rules and Regulation of the Condominium adopted with respect thereto. The Condominium Board may require that pet owners enter into an agreement with the Board confirming such owners' obligations with respect to their pets.

v.  No awnings, radio or television aerials or other projections shall be attached from any Residential Unit to the outside walls of the Building, and no blinds, shades or screens shall be attached to, hung or used on the exterior of any window or door of any Residential Unit, without the prior written consent of the Board of Managers, which consent shall not be unreasonably withheld or delayed. No blinds, shades, screens, draperies or drapery backing that are visible through the exterior windows shall be hung or used in any Residential Unit without the prior written consent of the Board of Managers.

- 60 -

25 × 10



REEL 3017 PG 2056
CONSIDERATION NO. 110ø

## STATE OF NEW YORK
### OFFICE OF THE ATTORNEY GENERAL

(212) 416-8112

ELIOT SPITZER
Attorney General

DIVISION OF PUBLIC ADVOCACY
REAL ESTATE FINANCING BUREAU

Corn Associates LLC
c/o Herrick, Feinstein LLP
Attention: Jean Gallancy
2 Park Avenue
New York, NY 10016

RE:     The Franklin Tower
        File Number:      CD990040
        Filing Fee:
        Acceptance Date:    06/03/1999

Amount offering $44,845,000.00
Receipt Number:

Dear Sponsor:

The offering literature submitted for the subject premises is hereby accepted and filed. Unless extended by duly filed amendment, the effectiveness of the filing shall expire twelve months from this date. All advertising and solicitation material must be consistent with the contents of the filed offering literature. Any material change of facts or circumstances affecting the property or the offering requires an immediate amendment.

Any misstatement or concealment of material fact in the literature filed renders this filing void ab initio. This office has relied on the truth of the certification of sponsor, sponsor's principals and sponsor's experts, as well as the transmittal letter of sponsor's attorney.

The issuance of this letter is conditioned upon the faithful performance of all of the obligations of the sponsor, its agents and instrumentalities, which are required by law or set forth in the offering literature. If there is a failure or neglect to perform any such obligations when required, the effectiveness of this letter shall be suspended, and all offering and sales shall cease, pending further action by this office. Issuance of this letter is further conditioned on the collection of all fees imposed by law. This letter is your receipt for the above filing fee.

The filing of the offering literature shall not in any way be construed as approval of the contents or terms thereof by the Attorney General of the State of New York. Nor does it waive or limit the Attorney General's authority to take enforcement action for violation of Article 23-A of the General Business Law or other applicable provisions of law.

Very truly yours,

Arthur Wolfish

ARTHUR WOLFISH
ASSISTANT ATTORNEY GENERAL    J.H.

120 Broadway, New York, NY 10271 ● (212) 416-8100 ● Fax (212) 416-8179

**25×**

## CITY REGISTER RECORDING AND ENDORSEMENT PAGE
## - NEW YORK COUNTY -
### (This page forms part of the instrument)

Block(s): *175*
F/k/A
Lots: *10*
W/k/A Lots

TOTAL NUMBER OF PAGES IN DOCUMENT INCLUDING THIS PAGE: *62*

RECORD & RETURN TO:

NAME ▼ *Metropolis Group % John Daly*
ADDRESS ▼ *299 Broadway - Suite 600*
CITY ▼ *New York*   STATE ▼ *NY*   ZIP ▼ *10007*

Title/Agent Company Name:
Title Company Number:

**OFFICE USE ONLY · DO NOT WRITE BELOW THIS LINE**

THE FOREGOING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

Examined by (✓):

| | |
|---|---|
| Mtge Tax Serial No. | |
| Mtge Amount | $ |
| Taxable Amount | $ |

Exemption (✓)  YES ☐  NO ☐

Type: 330EE | 255 | OTHER

Dwelling Type: 1 to 2 | 3 | 4 to 6 | OVER 6

**TAX RECEIVED ON ABOVE MORTGAGE ▼**

| | |
|---|---|
| County (basic) | $ |
| City (Add'l) | $ |
| Spec Add'l | $ |
| TASF | $ |
| MTA | $ |
| NYCTA | $ |
| TOTAL TAX | $ |

Apportionment Mortgage (✓)  YES ☐  NO ☐

Joy A. Bobrow, City Register

City Register Serial Number ➝ *060066*

Indexed By (✓): *RR*   Verified By (✓): *DJ*

Block(s) and Lot(s) verified by (✓): *WR*
Address ☐   Tax Map ☐
Extra Block(s)   Lot(s) *27*

| | |
|---|---|
| Recording Fee (B) | $ *408* |
| Affidavit Fee (C) | $ |
| TP-584/582 Fee (Y) | $ |
| RPTT Fee (R) | $ |
| HPD-A | HPD-C ☐ |

New York State Real Estate Transfer Tax ▼
$
Serial Number ➝

New York City Real Property Transfer Tax Serial Number ➝

New York State Gains Tax Serial Number ➝

*MAP FEE 8220*
*MAP# 5659*

### RECORDED IN NEW YORK COUNTY
### OFFICE OF THE CITY REGISTER

1994 DEC 23  A 10: 41

Witness My Hand and Official Seal



City Register

Joy A. Bobrow CITY REGISTER

25×